**In re San Juanita SANCHEZ, Pete Garcia, and Esperanza Lopéz Flores, Relators.**

No. 02–0317.

Supreme Court of Texas.

April 22, 2002.

Supplemental Opinion on Denial of Rehearing Aug. 29, 2002.

Israel Ramon, Jr., Law Office of Israel Ramon, for relators.

Jose R. Guerrero, Leo Montalvo, Jesus Ramirez, Montalvo & Ramirez, for respondent.

PER CURIAM.

In this mandamus proceeding, relators seek a writ directing San Juan's City Secretary, Vicki Ramirez, to accept their applications and place their names on the ballot for the upcoming city commission election. Ramirez refused to accept relators' applications, claiming they were untimely. Although relators submitted their applications after the deadline in Election Code section 143.007, relators did submit them before the filing deadline San Juan's Home Rule Charter prescribed. On April 17, 2002, we issued an order conditionally granting relief, with opinion to follow, because early voting began that day. We now hold that Texas Election Code section 143.005 permits a home-rule city to set a deadline for filing applications for municipal elections that differs from the deadline contained in Election Code section 143.007. Because relators timely submitted their applications under San Juan's Charter, Ramirez was required to accept them and place relators' names on the ballot.

I

Relator San Juanita Sanchez seeks to run for mayor in San Juan's May 4, 2002, general election. Relators Pete Garcia and Esperanza Lopez Flores seek to run for city commissioner in the same election. San Juan is a home-rule city, and its voters have adopted a Home Rule Charter. *See* TEX. CONST. art. XI, § 5; *see also* TEX. LOC. GOV'T CODE § 51.072. Under San Juan's Charter, relators had until thirty days before election day, which was April 4, 2002, to file their applications for a place on the ballot. The Charter Article X, section 10.07 provides, in relevant part: "Any qualified person who desires to become a candidate for election to a place on the City Commission shall file with the City Secretary at least thirty (30) days prior to

the election an application for his name to appear on the ballot."

On March 21, 2002, before the Charter's filing deadline, relators informed Ramirez that they intended to file their applications. Ramirez would not accept them, stating they were untimely under Election Code section 143.007. Section 143.007 provides, in relevant part: "Except as otherwise provided by this code, an application for a place on the ballot must be filed not later than 5 p.m. of the 45th day before election day." Tex. Elec.Code § 143.007(a). Ramirez claimed that section 143.007 controlled over the Charter and required relators to file their applications by March 20, 2002—forty-five days before election day. Because Ramirez would not accept relators' applications in person, relators mailed them to her on March 27, 2002.

Relators then sought mandamus relief in the court of appeals, seeking to require Ramirez to accept their applications and place their names on the ballots. That court denied relief without opinion. Relators next filed a mandamus petition with this Court. We conditionally granted relief, indicating that this opinion would follow.

## II

The parties do not dispute that relators filed their applications before the Charter's deadline, but after the deadline set forth in Election Code section 143.007. Accordingly, we decide the legal question of which filing deadline applies to relators' applications. *See In re Canales,* 52 S.W.3d 698, 701 (Tex.2001). We can then determine whether Ramirez had a duty to accept relators' applications and place their names on the ballot. *See* Tex. Elec.Code § 273.061.

## III

Home-rule cities, such as San Juan, derive their powers from the Texas Constitution. *See* Tex. Const. art. XI, § 5; *see also* Tex. Loc. Gov't Code § 51.072. They possess "the full power of self government and look to the Legislature not for grants of power, but only for limitations on their power." *Dallas Merchant's and Concessionaire's Ass'n v. City of Dallas,* 852 S.W.2d 489, 490–91 (Tex. 1993). We presume a home-rule city charter provision to be valid, and the courts cannot interfere unless it is unreasonable and arbitrary, amounting to a clear abuse of municipal discretion. *See City of Brookside Village v. Comeau,* 633 S.W.2d 790, 792 (Tex.1982); *City of Houston v. Todd,* 41 S.W.3d 289, 295 (Tex. App–Houston [1st Dist.] 2001, pet. denied).

A city charter provision that attempts to regulate a subject matter a state statute preempts is unenforceable to the extent it conflicts with the state statute. *See Dallas Merchant's and Concessionaire's Ass'n,* 852 S.W.2d at 491. However, if the Legislature decides to preempt a subject matter normally within a home-rule city's broad powers, it must do so with "unmistakable clarity." *Id.* Accordingly, courts will not hold a state law and a city charter provision repugnant to each other if they can reach a reasonable construction leaving both in effect. *Id.*

We must determine whether the Election Code preempts the Charter's thirty-day filing deadline. We start with Election Code section 141.031, which enumerates the "general requirements" that a candidate's application must satisfy. Tex. Elec.Code § 141.031. For example, a candidate's application must be in writing, be signed and sworn to by the candidate, and must include the candidate's name, occupation, and office sought. *Id.* § 141.031(1), (2), (4). Another general re-

quirement is that the application must "be timely filed with the appropriate authority." *Id.* § 141.031(3). Thus, section 141.031's plain language makes "timely fil[ing]" a requirement for a valid application. As we recently stated in *In re Gamble,* "the candidate has a duty to file a compliant application before the filing deadline." 71 S.W.3d 313, 318 (Tex.2002).

Section 141.031 does not specify when an application is "timely filed." However, section 143.007 requires a candidate to file an application no later than the forty-fifth day before election day, "[e]xcept as otherwise provided by this code." TEX. ELEC. CODE § 143.007(a). Thus, section 143.007 acknowledges that other Election Code sections may provide exceptions to the forty-five day filing deadline.

Section 143.005 embodies just such an exception. It governs applications for home-rule city office—the type of office at issue here. *Id.* § 141.005. Section 143.005(a) provides that "[a] city charter may prescribe requirements in connection with a candidate's application for a place on the ballot for an office of a home-rule city." *Id.* § 143.005(a). Accordingly, the Election Code expressly allows home-rule cities, such as San Juan, to establish their own application requirements in municipal elections. *See Bejarano v. Hunter,* 899 S.W.2d 346, 349 (Tex.App.-El Paso 1995, orig. proceeding).

Here, San Juan chose to establish a filing deadline that differs from the deadline in Election Code section 143.007. Instead of section 143.007's forty-five day deadline, San Juan's Charter requires a candidate to file an application with the City Secretary "at least thirty (30) days prior to the election day." The Charter's filing deadline does not conflict with the Election Code. Instead, section 143.005 expressly authorizes San Juan to establish a

different filing date. *See* TEX. ELEC.CODE § 143.005(a).

Certainly, the Election Code does not preempt with "unmistakable clarity" San Juan's ability to prescribe a different filing deadline. *See Dallas Merchant's and Concessionaire's Ass'n,* 852 S.W.2d at 491. We reject Ramirez's contention that Election Code sections 144.005 and 143.008 show the Legislature "clearly reserved for itself regulation in this area." Section 144.005 provides: "[e]xcept as otherwise provided by law," an application for office other than a county or city office must be filed no later than the forty-fifth day before election day. TEX. ELEC.CODE § 144.005(a). Ramirez states that Election Code section 1.005(10) defines "law," as meaning, among other things, "city charter." *Id.* § 1.005(10). Ramirez argues that, if the Legislature intended to allow home-rule cities to create exceptions to section 143.007's deadline, it would have used the phrase "other law" rather than "as otherwise provided by this code." *Compare* TEX. ELEC.CODE § 144.005, *with* § 143.007.

Ramirez's argument lacks merit. Section 144.005 does not apply to municipal elections and does not govern here. Moreover, Ramirez's argument presumes no other Election Code provision allows home-rule cities to adopt their own filing deadlines for municipal elections. But, as we have explained, section 143.005 does just that. Thus, section 144.005 in no way suggests that the Legislature intended to preempt home-rule cities from adopting their own filing deadlines.

We reach the same conclusion about section 143.008. Section 143.008 applies to candidates for city office "with a four-year term," and states:

> If at the deadline prescribed by Section 143.007 no candidate has filed an application for a place on the ballot for an

office, the filing deadline for that office is extended to 5 p.m. of the 40th day before election day.

Tᴇx. Eʟᴇᴄ.Cᴏᴅᴇ § 143.008(a), (b).

Section 143.008 applies only when section 143.007's deadline applies. And, section 143.007's deadline does not apply when a home-rule city charter prescribes a different filing deadline than does section 143.007. Accordingly, section 143.008 does not apply here, and does not preempt home-rule cities from adopting their own filing deadlines under section 143.005.

■ In fact, under Election Code section 143.005(b), when a home-rule city establishes its own application requirements, the only Election Code application requirement that the city must retain is a statement that "the candidate is aware of the nepotism law, Chapter 573, Government Code." *Id.* § 143.005(b). Consequently, the Election Code prohibits a home-rule city from adopting a charter provision that does not require a candidate's application to contain this statement. *Id.* § 141.031(4)(L). However, section 143.005(b) unambiguously states that "[t]he other provisions of Section 141.031 do not apply." *Id.* § 141.005(b). Therefore, a home-rule city need not retain any other application requirement in section 141.031, including "timely fil[ing]" under section 143.007. *Id.*

This construction of the Election Code gives effect to both the Election Code and San Juan's Charter provisions, without holding one filing deadline repugnant to the other. *See Dallas Merchant's and Concessionaire's Ass'n,* 852 S.W.2d at 491. It also gives appropriate deference to the broad discretionary powers the Texas Constitution gives to home-rule cities. *See id.*

We accordingly conclude that San Juan's Charter filing deadline applies here. Ramirez does not dispute that relators at-

tempted to file their applications within that deadline. Further, the only reason Ramirez gave for rejecting relators' applications was the deadline in Election Code section 143.007. We therefore hold that Ramirez was required to accept the applications and place relators' names on the ballot.

Without hearing oral argument, we conditionally granted the writ by order issued April 17, 2002, and directed Ramirez to accept relators' applications and place their names on the ballot. *See* Tᴇx.R.Aᴘᴘ. P. 52.8(c). As we noted in that order, the writ will not issue unless Ramirez does not comply with our decision.

Justice HANKINSON did not participate in the decision.

### Supplemental Opinion on Motion for Rehearing

PER CURIAM.

We deny relators' motion for rehearing. But by this supplemental opinion, we address the three arguments the Texas Secretary of State makes in her amicus brief filed in support of rehearing.

### I

The Secretary of State argues that our holding, which allows a home-rule city to prescribe a different filing deadline for municipal elections from that prescribed by Texas Election Code section 143.007, will have adverse effects that reach beyond this case. For example, the Secretary of State asserts that federal law requires election ballots to be mailed to military and overseas voters no later than thirty days before election day. *See* 42 U.S.C. § 1973ff–1. The Secretary of State asserts that because we have upheld San Juan's filing deadline of thirty days before election day to apply for a place on the

ballot, it is impossible to comply with this federal law.

The Secretary of State contends that, compounding this problem, Texas Election Code section 146.054 requires that write-in candidates be given five days after the filing deadline for their applications to be received. Therefore, under San Juan's thirty-day filing deadline, the application process cannot close until twenty-five days before election day. And the ballot printing process can only begin on the twenty-fourth day before election day. According to the Secretary of State, six days after federal law requires the ballots to be mailed, the ballots will be sent to the printer. As a result, the Secretary of State argues that our holding effectively allows home-rule cities to violate federal law.

We disagree. First, our opinion in no way suggests that a home-rule city is free to violate federal law when setting an application deadline for a place on the ballot in a municipal election. Second, the only authority the Secretary of State cites as requiring her to mail ballots to military and overseas voters no later than thirty days before election day is 42 U.S.C. § 1973ff–1. But that statute is inapplicable here.

42 U.S.C. § 1973ff–1 provides that each state shall:

(1) permit absent uniformed services voters and overseas voters to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections *for Federal office;*

(2) accept and process, with respect to any election *for Federal office,* any otherwise valid voter registration application and absentee ballot application from an absent uniformed services voter or overseas voter, if the application is received by the appro-

priate State election official not less than 30 days before the election;

(3) permit overseas voters to use Federal write-in absentee ballots (in accordance with section 1973ff–2 of this title) in general elections *for Federal office;* and

(4) use the official post card form (prescribed under section 1973ff of this title) for simultaneous voter registration application and absentee ballot application.

42 U.S.C. § 1973ff–1 (emphasis added). Thus, 42 U.S.C. § 1973ff–1 only applies to elections for federal office, not to municipal elections in home-rule cities. Moreover, 42 U.S.C. § 1973ff–1 does not require the Secretary of State to mail ballots to military and overseas voters thirty days before election day. Rather, it requires military and overseas voters to submit voter registration applications to the "appropriate State election official" not less than thirty days before election day. 42 U.S.C. § 1973ff–1(2).

We have found no provision requiring the Secretary of State to mail ballots to military and oversea voters in municipal elections for home-rule cities thirty days before election day. In fact, Texas Election Code section 101.004(e) states that military personnel and individuals domiciled in Texas but temporarily living outside the territorial limits of the United States may request a ballot for an election by submitting a "federal postcard application" by the thirtieth day before election day. *See* Tex. Elec.Code §§ 101.001–101.004. If the voter timely submits such an application, then the balloting materials must be airmailed to the voter. *See* Tex. Elec.Code § 101.007. But if the voter can request balloting materials up to the thirtieth day before election day, the Secretary of State cannot be required to mail ballots thirty days prior to election day. Thus, we

are unpersuaded that our opinion has created a conflict with federal law or allows home-rule cities to violate federal law.

The Secretary of State also contends that our opinion will have adverse effects by allowing home-rule cities to set any filing deadline they want. The Secretary of State asserts that the Election Code requires early voting to begin seventeen days before election day. *See* TEX. ELEC. CODE § 85.001. Because write-in candidates are allowed an additional five days after the filing deadline to submit their applications, the Secretary of State argues that, depending on the deadline the home-rule city adopts, it might become impossible for the printed ballots to be ready for early voting.

The Secretary of State's argument does not warrant granting rehearing in this case. The Secretary of State does not contend that San Juan's thirty-day filing deadline runs afoul of the Election Code's early voting deadlines. Instead, she expresses concern about other home-rule cities possibly adopting deadlines shorter than San Juan's that could impact early voting and the Election Code's other timing requirements. But such a case is not before us.

■ Moreover, we agree that the Election Code contains certain timing requirements that home-rule cities must meet when selecting a filing deadline to apply for a place on the ballot in a municipal election. We did not suggest otherwise in our initial opinion. Those timing requirements, however, do not prohibit a home-rule city from adopting under section 143.005 a different filing deadline for municipal elections than the forty-five-day deadline prescribed under section 143.007. Indeed, the Secretary of State concedes that political subdivisions other than counties and cities can adopt their own filing deadlines under section 144.005. But she

offers no explanation about why that does not create a conflict with the Election Code's other timing requirements.

## II

The Secretary of State next argues that our opinion interprets Election Code section 143.007 in a way that contravenes legislative intent. The Secretary of State asserts that Texas Election Code section 31.003 requires her to "obtain and maintain uniformity in the application, operation, and interpretation of this code and of the election laws outside this code." The Election Code defines "law" as "a constitution, statute, city charter, or city ordinance." TEX. ELEC.CODE § 1.005(10). Thus, the Secretary of State contends, the Legislature intended that uniformity should govern the interpretation of election laws contained in city charters.

According to the Secretary of State, Election Code section 143.005 allows home-rule cities to adopt differences only in the application form for a place on the ballot—not the filing deadline. The Secretary of State also points to Texas Education Code section 11.055, which provides for a forty-five-day deadline for filing an application for school-related elections. TEX. EDUC.CODE § 11.055. According to the Secretary of State, elections for an independent school district or community college can be combined with a city election. By providing the same deadline for both city and school elections, the Election and Education Codes work together to encourage joint elections, thereby lowering election costs.

■ In addition, the Secretary of State asserts that the Legislature knew how to alter filing deadlines because it did so for political subdivisions other than counties and cities in Election Code section 144.005. It provided there that "[e]xcept as other-

wise provided by law, an application for a place on the ballot must be filed not later than 5 p.m. of the 45th day before election day." Thus, the Secretary of State contends that the Legislature knew how to be clear when excepting a political entity from the forty-five-day deadline. The Secretary of State contends that section 143.007's language—"[e]xcept as otherwise provided by this code"—refers to the deadline for a special election to fill a vacancy under Texas Election Code section 201.054.

Section 201.054(a) provides:

A candidate's application for a place on a special election ballot must be filed not later than:

(1) 5 p.m. of the 31st day before election day, if election day is on or after the 36th day after the date the election is ordered; or

(2) 5 p.m. of a day fixed by the authority ordering the election, which day must be not earlier than the fifth day after the date the election is ordered and not later than the 20th day before election day, if election day is before the 36th day after the date the election is ordered.

According to the Secretary of State, the Legislature intended that political subdivisions other than counties and cities could set their own filing deadlines. But the Legislature intended the forty-five-day deadline to apply to cities and counties, except for special elections.

■ As mentioned, the Secretary of State interprets section 143.005 as allowing home-rule cities to adopt differences only in the application form for a place on the ballot. But the Election Code indicates otherwise. The Legislature provided in section 143.005(b) that the only Election Code application requirement a home-rule city must retain is a statement that "the candidate is aware of the nepotism law, Chapter 573, Government Code." *See* Tex.

Elec.Code §§ 141.031(4)(L); 143.005(b). And the "other provisions of Section 141.031 do not apply." Tex. Elec.Code § 143.005(b). Those "other provisions" include "timely fil[ing]." *See id.* § 141.031(3). The Legislature could have said in section 143.005(b) that the home-rule city must also retain the "timely fil[ing]" requirement of section 143.007, but it did not do so.

The Secretary of State further attempts to limit section 143.007's phrase—"[e]xcept as otherwise provided by this code"—to section 201.054. While section 201.054 may be included in section 143.007's exception, that exception is broader than the Secretary of State suggests. For example, section 143.007 does not state "[e]xcept as otherwise provided by section 201.054." The exception we relied upon is contained in section 143.005, and that is a provision "otherwise provided by this code."

Further, the Secretary of State may be correct that the Education Code and the Election Code allow elections for an independent school district or community college to be combined with a city election to lower election costs. But neither the Secretary of State nor the Education and Election Codes suggest that this is mandatory. Presumably, a home-rule city is aware that it can combine such elections if the filing deadlines are the same, which will save it money. But that does not change the conclusion that section 143.005 permits a home-rule city to adopt a different filing deadline for municipal elections than what section 143.007 prescribes. Here, if San Juan's voters decide it would be better to have combined elections, they can amend the City Charter to provide a forty-five-day filing deadline for municipal elections.

## III

■ The Secretary of State's last argument is that the Court's ruling effects a

change in the law requiring submission to the Department of Justice. The Secretary of State asserts that in a 1983 election law opinion, the Secretary of State determined that state election law prevails over conflicting provisions of city charters. Since the Election Code became effective in 1986, the Secretary of State's interpretation of the forty-five-day filing deadline has been that it prevents home-rule cities from adopting their own application deadlines. The Secretary of State asserts that this interpretation was sent to the Justice Department in a 1985 letter stating:

The revised law [section 143.007] standardizes the filing deadline for a candidate's application for a place on the ballot for a city office. The section provides a deadline of the 45th day before election day rather than the 31st day before election day, to allow for the authority's obtaining ballots in time to start sending out absentee mail ballots as soon as possible after the 45th day preceding the election pursuant to section 86.004.

The Secretary of State contends that our opinion reaches a different conclusion and represents a change in the State's election law. The Secretary of State asserts that federal law requires changes in state election laws, whether those changes occur by legislation or through court order, to be submitted to the Justice Department for pre-clearance. *See, e.g.*, 42 U.S.C. §§ 1973b(f)(2) and 1973c. The Secretary of State asserts that she is responsible for submitting those changes, and if this Court's judgment becomes final, that change must be submitted to the Justice Department.

Our opinion does not change the State's election law. We were called upon only to interpret the existing Election Code's language. And we concluded that section 143.005 authorizes San Juan's City Char-

ter's provision prescribing a thirty-day filing deadline, instead of the forty-five-day filing deadline prescribed by section 143.007.

Moreover, the Secretary of State's letter sent to the Justice Department in 1985 provides: "[t]he revised law [section 143.007] standardizes the filing deadline for a candidate's application for a place on the ballot for a city office...." But the letter does not state that section 143.007 standardizes the filing deadline for a candidate's application for a place on the ballot for a "home-rule" city office. This distinction is significant because that same letter provides that section 143.005 "authorizes a home-rule city by charter to prescribe requirements for a candidate's application for a place on the ballot for a city office...." Thus, the Secretary of State made clear to the Justice Department in 1985 that home-rule cities could prescribe their own requirements for a candidate's application for a place on the ballot in municipal elections. And under Election Code section 143.005, those "requirements" include filing deadlines. In any event, if the Secretary of State does not think that the 1985 submission is accurate under our construction of the Election Code, she may, of course, determine that the submission should be amended.

Relators' motion for rehearing is denied.