

# ATTORNEY GENERAL OF TEXAS

## GREG ABBOTT

March 4, 2003

The Honorable Carlos Uresti
Chair, Human Services Committee
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0025

Re: Whether a home-rule municipality may adopt instant runoff voting   (RQ-0591-JC)

Dear Representative Uresti:

Your predecessor asked about a home-rule municipality's authority to adopt instant runoff, or "preferential," voting.[1]

Representative Naishtat indicated that in 2001 citizens and officials of the City of Austin (the "City") considered adopting instant runoff voting. *See* Request Letter, *supra* note 1, at 1. He described instant runoff voting as a method that eliminates the need for an expensive runoff election if no candidate has garnered a majority of the votes cast at an initial election:

> [W]hen voters go to the polls, they rank candidates as to their first choice, second choice, third, fourth[,] and so on.  If a candidate does not receive a clear majority of votes on the first count, a series of simulated runoff counts are then conducted until one candidate receives a majority.  After the first count, the candidate who received the fewest first place ballots is eliminated and his or her second place votes reallocated to the remaining candidates. All ballots are then tabulated, with each ballot counting as one vote for each voter's favorite candidate who is still in contention. Voters who chose the now-eliminated candidate [as their first choice] have to support their second choice candidate—just as if they were voting in a traditional two-round runoff election—but all other voters get to continue supporting their top candidate.  This process continues until a candidate receives a majority.[2]

---

[1]Letter from Honorable Elliott Naishtat, Chair, Human Services Committee, Texas House of Representatives, to Honorable John Cornyn, Texas Attorney General at 1 (Aug. 22, 2002) (on file with Opinion Committee) [hereinafter Request Letter].

[2]For a sample instant runoff ballot, see http://www.fairvotevermont.org/ballot.pdf.

*Id.* at 1-2 (footnote added); *see also, e.g.*, Tony Anderson Solgard & Paul Landskroener, Feature, *Municipal Voting System Reform: Overcoming the Legal Obstacles*, 59 BENCH & BAR MINN. 16, 17-18 (Oct. 2002); Roberta A. Yard, Comment, *American Democracy and Minority Rule: How the United States Can Reform its Electoral Process to Ensure "One Person, One Vote*," 42 SANTA CLARA L. REV. 185, 214-15 (2001).

The Election Code (the "Code"), which "applies to all general, special, and primary elections held in this state," "supersedes a conflicting statute . . . unless this code or the outside statute expressly provides" to the contrary. TEX. ELEC. CODE ANN. § 1.002(a)-(b) (Vernon 1986). To maintain uniformity in applying and using the election laws, the Code designates the secretary of state as the chief election officer. *See id.* § 31.003; *Bullock v. Calvert*, 480 S.W.2d 367, 371 (Tex. 1972).

Chapter 275, in particular, applies to elections for officers in a city with a population of 200,000 or more, such as the City. *See* TEX. ELEC. CODE ANN. § 275.001 (Vernon 1986) (regarding applicability); BUREAU OF THE CENSUS, U.S. DEP'T OF COMMERCE, 2000 CENSUS OF POPULATION: General Population Characteristics: Texas, City of Austin (population: 656,562), *available at* http://www.factfinder.census.gov); *see also* TEX. GOV'T CODE ANN. § 311.005(3) (Vernon 1998) (defining term "population" generally as "population shown by . . . most recent federal decennial census"). Under section 275.002, "[t]o be elected to a city office, a candidate must receive a majority of the total number of votes received by all candidates for the office." TEX. ELEC. CODE ANN. § 275.002 (Vernon 1986). Section 275.003 requires a city with a population of 200,000 or more to elect officers by place until the city establishes another system:

> (a) When a city attains a population of 200,000 or more, the city shall establish a system of electing its governing body in accordance with this section if in the city's general elections more than one member of its governing body is elected from the same set of candidates.

> (b) Not later than the 60th day before the date of the first general election held in accordance with this section, the city's governing body shall assign a place number to each position on the governing body that is to be elected from the same territory as another position, identifying it by the name of the incumbent at the time the assignment is made.

> (c) One person shall be elected to fill each position for which a place number appears on the ballot.

> (d) The city shall use the place system required by this section until the city establishes another system of election that is consistent with an election by majority vote.

*Id.* § 275.003.

Once an election has been held, section 2.021 of the Code generally requires a runoff election when no one "candidate for a particular office . . . in an election requiring a majority vote" received a majority of the votes cast. *Id.* § 2.021 (Vernon 1986). If a runoff is necessary, "the authority responsible for ordering the main election" must order a runoff election. *Id.* § 2.024. "[T]he candidates in a runoff election are the candidates who receive the highest and second highest number of votes in the main election or who tie for the highest number of votes." *Id.* § 2.023(a).

After considering a City inquiry regarding the legality of instant runoff voting, the secretary of state concluded, in Election Law Opinion HC-1, that the City could not adopt instant runoff voting. *See* Op. Tex. Sec'y State No. HC-1 (2001) at 5. While acknowledging a home-rule municipality's "broad authority," the secretary cautioned that a city charter must comport with state law, which requires election by a majority. *Id.* at 1 (citing TEX. CONST. art. II, § 5). The majority vote requirement in sections 275.002 and 275.003(d) of the Code "theoretically could include preferential majority," the opinion continues, but "the term ["majority"] as it has been used in the [Election] Code does not." *Id.* at 2. Rather, "the meaning of the word 'majority,' as the Texas Legislature has used it in the Code and as it has been interpreted by the courts, is majority in the 'classic' or 'traditional' sense, *i.e.*, a majority vote consists of more than half of the original votes, *as cast and not re-assigned by the voter's secondary or tertiary intent.*" *Id.* at 3 (emphasis added). The secretary of state believed that his opinion was further supported by the 1985 repeal of a statute expressly providing for preferential voting. *See id.* at 2-3; *see also* Act of May 13, 1985, 69th Leg., R.S., ch. 211, 1985 Tex. Gen. Laws 802, 802. Representative Naishtat asked us to determine first whether the secretary of state correctly determined the proper standard for resolving the preemption issue. *See* Request Letter, *supra* note 1, at 3.

The secretary of state articulated the proper standard for determining whether state law preempts a home-rule municipality's authority generally. As the secretary indicated, state law preempts a home-rule municipality's charter or ordinance if the state law and municipal law are irreconcilably inconsistent. *See* TEX. CONST. art. XI, § 5 (prohibiting home-rule municipality from adopting charter or ordinance that contains "any provision inconsistent with the Constitution . . . , or . . . the [state's] general laws"); *see also* TEX. LOC. GOV'T CODE ANN. § 5.004 (Vernon 1999) (providing that home-rule municipality operates under municipal charter that has been adopted under article XI, section 5 of Texas Constitution). To the extent a home-rule municipality's charter conflicts with a state statute, the charter provision is unenforceable. *See* TEX. LOC. GOV'T CODE ANN. § 51.072(a) (Vernon 1999). But a court "'will not hold a state law and a [home-rule municipality's] charter provision repugnant to each other if [the court] can reach a reasonable construction [that leaves] both in effect.'" *In re Sanchez*, 81 S.W.3d 794, 796 (Tex. 2002) (quoting *Dallas Merchs. & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 491 (Tex. 1993)); *see also City of Richardson v. Responsible Dog Owners*, 794 S.W.2d 17, 19 (Tex. 1990) ("When there is no conflict between a state law and a city ordinance, the ordinance is not void.").

Moreover, the secretary correctly declared that the Code preempts inconsistent home-rule charter provisions. *See* Op. Tex. Sec'y State No. HC-1 (2001) at 1-2. The Code preempts with "unmistakable clarity" contrary home-rule municipality charter provisions and ordinances,

except where the Code expressly permits a conflicting law. *In re Sanchez*, 81 S.W.3d at 796 (quoting *Dallas Merchs. & Concessionaire's Ass'n*, 852 S.W.2d at 491); *see, e.g.*, TEX. ELEC. CODE ANN. §§ 1.002(b), 2.022 (Vernon 1986) (stating that Election Code generally supersedes conflicting laws).

Representative Naishtat also asked whether state election law preempts the City's adoption of instant runoff voting. *See* Request Letter, *supra* note 1, at 3. The secretary of state's opinion focuses on the statutory majority vote requirements. *See* Op. Tex. Sec'y State No. HC-1 (2001) at 2-3. By contrast, we believe that the statutory runoff requirements preempt an instant runoff system.

The Code plainly precludes a municipality from adopting an instant runoff system. Under the Code, in the event of a plurality vote in a home-rule municipality, the appropriate official must order a runoff election. *See* Tex. Att'y Gen. Op. No. JC-0293 (2000) at 2 (citing *Estrada v. Adame*, 951 S.W.2d 165, 167 (Tex. App.–Corpus Christi 1997, no pet.). *Compare* TEX. ELEC. CODE ANN. § 2.001 (Vernon 1986) (stating that, except as otherwise provided, candidate must receive plurality vote to win), *with id.* § 2.021 (requiring runoff in election "requiring majority vote"). The runoff election generally must be conducted between the twentieth and thirtieth day "after the date the final canvass of the main election is completed." *Id.* § 2.025(a) (Vernon Supp. 2003). Although in certain circumstances a runoff election may be held after this prescribed period, *see id.* § 2.025(b), in no circumstances does the Code prescribe that a runoff be held simultaneously with the main election. The election officer's duty to call a timely runoff election where no candidate received a clear majority is "clear." *See Estrada*, 951 S.W.2d at 167. Furthermore, a home-rule charter is not a law that can supersede section 2.021's runoff requirement. *See id.* (concluding that home-rule municipality's charter allowing election by plurality did not prevail over runoff requirement).

Representative Naishtat suggested that section 275.003(d) may allow a home-rule municipality to adopt instant runoff voting. *See* Request Letter, *supra* note 1, at 3 (summarizing arguments of instant runoff voting proponents and secretary of state). Section 275.003(d) requires a municipality with a population of 200,000 or more to use the place system "until the city establishes another system of election that is consistent with an election by majority vote." TEX. ELEC. CODE ANN. § 275.003(d) (Vernon 1986).

Section 275.003(d) does not apply here. Section 275.003 as a whole applies only to a municipality that has recently attained a population of 200,000 or more: "When a city attains a population of 200,000 or more, the city shall establish a [place] system of electing its governing body." *Id.* § 275.003(a). Election "by place" generally denotes "the scheme of electing multiple candidates from the same territory by assigning distinct 'place' numbers to as many positions as are to be filled by the election." Tex. Att'y Gen. Op. No. DM-122 (1992) at 2. As the secretary of state has suggested, an "other method consistent with majority vote" for the purposes of section 275.003(d) may be election by single-member district. Op. Tex. Sec'y State No. HC-1 (2002) at 3.

The fact that the legislature deleted statutory references to preferential voting in 1985, as the secretary of state has pointed out, lends additional, although not conclusive, support to our

determination. *See id.* at 2-3. From the time of its original adoption in 1941 and its codification in 1985, state law had excepted from majority vote and runoff requirements a municipality whose charter provided for selecting local officers "by means of a preferential type of ballot; provided that such city does not use voting machines as the legal method of voting." Act of Mar. 26, 1941, 47th Leg., R.S., ch. 80, § 2, 1941 Tex. Gen. Laws 98, 99; *see also Clancy v. Clough*, 30 S.W.2d 569, 573 (Tex. Civ. App.–Galveston 1928, no writ) (approving use of preferential ballot in City of Houston's primary elections); *Tomlinson v. Williamson*, 243 S.W. 287, 288 (Tex. Civ. App.–El Paso 1922, writ dism'd w.o.j.) (concluding that city charter provision permitting voting by preferential ballot did not violate Texas Constitution article VI, sections 3-4). This preferential ballot provision disappeared without explanation when the current Code was adopted in 1985. *See* Act of May 13, 1985, 69th Leg., R.S., ch. 211, 1985 Tex. Gen. Laws 802, 802.

We conclude that state law conflicts irreconcilably with, and thereby preempts, instant runoff voting. Consequently, a home-rule municipality may not adopt instant runoff voting.[3]

---

[3]We note that a bill was introduced to the United States House of Representatives that would establish a program under which the Federal Election Commission would "make grants to eligible States which have adopted an instant runoff voting system for presidential elections." H.R. 3232, 107th Cong., § 3 (2001). The bill was referred to the Committee on House Administration in November 2001. *See id.*

## S U M M A R Y

State law preempts a home-rule municipality's adoption of instant runoff voting. A home-rule municipality that is subject to section 275.002 of the Election Code or article XI, section 11 of the Texas Constitution is not authorized to adopt instant runoff voting. Instant runoff voting is irreconcilably inconsistent with statutes requiring a municipality, in the event no candidate receives a majority of the votes cast, to conduct a runoff election at a later date.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General - General Counsel

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee