# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00168-CV

**City of Laredo, Appellant**

**v.**

**Webb County, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
### NO. GV403943, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

## O P I N I O N

The sole issue raised in this appeal is whether Webb County is authorized to construct a toll bridge within the municipal limits of a home-rule city, the City of Laredo, without the City's consent. The district court entered a declaratory judgment in favor of Webb County stating that Chapter 364 of the Texas Transportation Code provides the County with such authority. *See* Tex. Transp. Code Ann. § 364.001 (West 1999). We will reverse and render in part and reverse and remand in part.

## BACKGROUND

Currently, there are four international bridges located in the Laredo area providing access between the United States and Mexico for commercial, passenger, and pedestrian traffic.[1]

---

[1] Specifically, these are the Gateway to the Americas Bridge (Bridge I), the Juarez-Lincoln International Bridge (Bridge II), the Columbia-Solidarity Bridge (Bridge III), and the World Trade

The City owns each of these bridges, comprising the "Laredo Bridge System," from which the City derives a significant amount of annual revenue.[2] In the late-1990's, officials from the City of Laredo, Webb County, and Mexico began contemplating the need for a fifth international bridge connecting Mexico to Texas over the Rio Grande River. As of 2000, both the City and the County had expressed intentions to construct this new bridge through Laredo. In May 2001, it became clear that the City's and the County's intentions were in competition with one another when the City adopted an official resolution declaring its opposition and lack of consent to the County's proposed construction of the bridge.

In order to construct an international bridge over the Rio Grande, a political subdivision must receive the approval of the State of Texas through the Texas Department of Transportation ("TxDOT"), the United States, and Mexico. *See id.* § 201.612 (West Supp. 2005); *see also* 33 U.S.C.A. §§ 535-535b (2001) ("International Bridge Act"). Both the City and the County submitted applications to TxDOT for approval to construct a fifth international bridge in Laredo. In 2004, TxDOT approved both applications. Thereafter, both the City and the County submitted federal applications for Presidential Permits to construct the bridge; these applications are still pending.

---

Bridge (Bridge IV).

[2] The City owns the northern sides of the bridges, while the Caminos y Puentes Federales owns the southern sides. Accordingly, the City collects tolls on these bridges from southbound traffic, and CAPUFE collects tolls from northbound traffic. The United States and Mexico each have customs and immigrations offices that control traffic at the border.

On November 24, 2004, the County petitioned the district court for a declaratory judgment that it was authorized to construct the toll bridge within the municipal limits of Laredo, despite the City's objections and without the City's consent. The County alternatively sought a declaration that, if the City's consent was required, the City should not be entitled to withhold its consent in this case because its bond covenants, which would be used to fund the construction, are unlawful. *See* Tex. Gov't Code Ann. § 1205.021 (West 2000) (governing public-security declaratory judgment actions).

On March 25, 2005, the district court granted the County's requested declaratory relief, stating that the County was authorized to construct the toll bridge without the City's consent. The court did not reach the County's alternative argument about the bond covenants. The City appealed that judgment to this Court. Although presented as four separate challenges, the City essentially raises one issue on appeal: Did the district court err by declaring that the transportation code authorizes Webb County to construct an international toll bridge through the City of Laredo, a home-rule city, without the City's consent?

**ANALYSIS**

The establishment and control of public roadways is primarily a function belonging to the state, and the legislature has discretion to delegate such authority to political subdivisions or agencies of the state, as permitted by the constitution. *Robbins v. Limestone County*, 268 S.W. 915, 918 (Tex. 1925); *City of Piney Point Village v. Harris County*, 479 S.W.2d 358, 365 (Tex. Civ. App.—Houston [1st Dist.] 1972, writ ref'd n.r.e.). Here, we are asked to resolve an apparent conflict

3

between the legislature's competing grants of authority to cities and to counties over certain public roadways, specifically, over the construction of an international toll bridge within a home-rule city's limits. To resolve this conflict, we will interpret the transportation code according to the applicable rules of statutory construction, considering the well-established precedent on the subject matter.

Questions of statutory construction are legal matters subject to *de novo* review. *Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 734 (Tex. 2002). When interpreting a statutory provision, we must ascertain and effectuate the legislative intent. *Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 176 (Tex. 2004). To do so, we must give the words used by the legislature their plain and common meaning, read the statute as a whole, and consider the statute's history and purposes as well as the consequences of alternate constructions. *See* Tex. Gov't Code Ann. § 311.023 (West 2005); *Texas Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004); *Cash Am. Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 16 (Tex. 2000). If an apparent conflict exists between two provisions, where possible, we must construe the provisions in a harmonious manner, giving effect to each. Tex. Gov't Code Ann. § 311.021 (West 2005); *In re J.M.R.*, 149 S.W.3d 289, 292 (Tex. App.—Austin 2004, no pet.). If the conflict is irreconcilable, the more "special or local provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that [it] prevail." Tex. Gov't Code Ann. § 311.025(b) (West 2005).

Transportation code section 364.001(a) states that "[a] county bordering the Rio Grande, acting through the commissioners court of the county, as a part of its road and bridge system may acquire a toll bridge by any method, including by: (1) construction." Tex. Transp. Code Ann.

4

§ 364.001(a). It is undisputed that this provision entitles Webb County to construct toll bridges. *Id*. The question is whether section 364.001(a) authorizes Webb County to construct a toll bridge *inside the City of Laredo's municipal limits, without the City's consent.*

Although the legislature granted the authority to construct toll bridges to counties bordering the Rio Grande in section 364.001(a), the legislature granted the same authority to cities bordering the Rio Grande in section 367.003, which provides that municipalities bordering the Rio Grande have the right to "construct . . . a toll bridge over a section of the Rio Grande that forms the border between this state and the United Mexican States." *Id*. §§ 367.001, .003 (West Supp. 2005). Rather than making this authority equal or subordinate to the power granted to counties in section 364.001(a), the legislature expressly provided that the municipal authority granted in section 367.003 shall control over any other conflicting law. *Id*. § 367.017 (West Supp. 2005). Moreover, section 251.012 expressly requires "the approval of the governing body of a municipality" before a county may "finance the construction . . . of a street or alley . . . that is located in the municipality, including the provision of . . . bridges." *Id*. § 251.012 (West Supp. 2005).

Interpreting sections 364.001, 367.003, and 251.012 harmoniously, we find that under the circumstances of this case,[3] the legislature has delegated the power to construct international toll bridges to its political subdivisions as follows: Cities bordering the Rio Grande have an express right to construct a toll bridge over the border into their municipal territory. *Id*. § 367.003. Counties

---

[3] We do not attempt to resolve every potential conflict that may arise between a city's and a county's authority to construct roads or transportation related improvements. We limit our holding to the facts presented by this case.

5

bordering the Rio Grande are also permitted to construct a toll bridge over the border, but if a county intends to finance the construction of a toll bridge within the municipal limits, the city's approval is required. *Id*. §§ 251.012, 364.001(a). In instances of conflict, the city's authority to construct a toll bridge over the Rio Grande controls over the county's authority to do so. *Id*. § 367.017.

The fact that Laredo is incorporated as a home-rule city is also important to the resolution of this case. Home-rule cities do not depend on the legislature for specific grants of authority but, instead, have a constitutional right of self-government and look to the legislature only for specific limitations on their power. Tex. Const. art. XI, § 5; *Quick v. City of Austin*, 7 S.W.3d 109, 122 (Tex. 1999); *Dallas Merch. & Concessionaires Ass'n v. City of Dallas*, 852 S.W.2d 489, 490-91 (Tex. 1993). For the legislature to divest a home-rule city of such authority, the legislature's intent to do so must be expressed with "unmistakable clarity." *In re Sanchez*, 81 S.W.3d 794, 796 (Tex. 2002). On the other hand, counties have only those powers expressly conferred by the legislature or those powers necessarily implied from other grants of power. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 28 (Tex. 2003). Although counties are vested with general authority over roadways, *see* Tex. Transp. Code Ann. § 251.016 (West Supp. 2005),[4] when a town incorporates itself as a home-rule city, it "removes the power from the [county] to lay out and regulate roads within the city limits," and transfers that power to the governing body of the municipality. *Harrison County v. City of Marshall*, 253 S.W.2d 67, 69 (Tex. Civ. App.—Fort Worth 1952, writ ref'd). Moreover, the legislature has expressly provided that home-rule cities exercise

---

[4] This has been the law since 1876. *See* Act of July 22, 1876, 15th Leg., R.S., ch. LV, § 4, 1876 Tex. Gen. Laws 887-88.

6

"exclusive control over and under the public highways, streets, and alleys of the municipality." Tex. Transp. Code Ann. § 311.001(a) (West 1999).

This case does not present the first situation in which a home-rule city and a county have found their overlapping powers to be in conflict. For over a century, Texas courts have resolved this conflict by holding that, within the municipal territory of a home-rule city, the county's general authority over roadways must yield to the city's specific authority within its limits. *See, e.g.*, *State v. Jones*, 18 Tex. 874, 878 (1857). In *Jones*, the supreme court was asked to resolve "a conflict of jurisdiction between . . . Goliad county, and the . . . town of Goliad, in respect to the authority of these two bodies over the roads, streets, and thoroughfares, which run through and are within the incorporated limits of the town." *Id*. The court began by noting that counties exercise general jurisdiction over county roads while home-rule cities have special authority over the roadways within their boundaries. *Id*. The court then held that, in order to avoid an "irreconcilable conflict" between these competing powers, the proper interpretation of the law was that, "when both bodies attempt to act in opposition to, and in conflict with each other, the power and authority of one must cease and yield to that of the other, and in [this situation], . . . the authority of the county court must yield to that of the town council." *Id*. at 881. Relying on this holding, the Galveston court of appeals held that a county was only permitted to expend funds to improve a road within the corporate limits of a city if the city consented. *Hughes v. County Comm'r Court of Harris County*, 35 S.W.2d 818, 821 (Tex. Civ. App.—Galveston 1931, no writ). The supreme court also emphasized the requirement of city approval in *City of Breckenridge v. Stephens County* by holding that counties are permitted to make improvements to city streets "when such improvements are made without conflicting with

7

the jurisdiction of the municipality, or with its consent or approval." 40 S.W.2d 43, 44 (Tex. 1931). Similarly, the Dallas court of appeals held that counties may only exercise control over a home-rule city's roadways if the city has failed to assert its authority because, otherwise, "unseemly conflicts and interminable confusion" would result from a "twilight zone in which cities and counties have concurrent jurisdiction." *Benat v. Dallas County*, 266 S.W. 539, 541 (Tex. Civ. App.—Dallas 1924, writ ref'd).

Because the legislature is charged with knowledge of the existing law, *Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526, 531 (Tex. 2004), we must presume that, when enacting the relevant provisions of the transportation code, the legislature understood (1) that home-rule cities, such as the City of Laredo, have a constitutional right of self-government, Tex. Const. art. XI, § 5; (2) that within the limits of a home-rule city, the city's constitutional right of self-government prevails over a county's general authority, *City of San Antonio*, 111 S.W.3d at 28; and (3) that, to divest a home-rule city of its authority, the legislature must speak with unmistakable clarity, *In re Sanchez*, 81 S.W.3d at 796. Consequently, the legislature's decision to remain silent about the requirement of city approval in section 364.001(a) is consistent with an intention to maintain the rule that, when a county's authority conflicts with a home-rule city's regarding roadways within the municipality, the county must yield to the city. *See Jones*, 18 Tex. at 881. The legislature's silence also does not reflect an unmistakably clear expression of legislative intent to divest home-rule cities of their right of self-governance with respect to the construction of international bridges inside the municipality. It was unnecessary for the legislature to specifically require a home-rule city's consent or approval

8

before a county may construct a toll bridge within the city's territory because this limitation is implied by the historical framework in which section 364.001 was enacted.

In response, the County argues that interpreting section 364.001(a) as requiring the City's consent renders meaningless the authority granted to counties in that section. *See* Tex. Transp. Code Ann. § 364.001. In making this argument, however, the County overlooks its ability under section 364.001(a) to construct an international toll bridge within its county limits and outside the city limits, regardless of whether the City approves. Webb County has sixty miles of land bordering the Rio Grande outside of Laredo's city limits on which it could construct a toll bridge without the City's consent. Yet, the County's preference is to locate the bridge within the City. The statute does not prohibit a county from ever constructing a toll bridge within a city's limits, nor does it provide cities with exclusive jurisdiction over international toll bridges. It simply requires that the County obtain the City's approval to construct a toll bridge within the City's limits.

The County also urges that section 364.001(a) cannot be interpreted as requiring the City's consent because the relevant federal statute, the International Bridge Act, requires only the approval of the state, the United States, and Mexico. *See* 33 U.S.C.A. §§ 535-535b; *see also* Tex. Transp. Code Ann. § 201.612. According to the County, such an interpretation unreasonably empowers the City to prevent the County's construction of an international toll bridge even if Texas, the United States, and Mexico all approve it. We disagree.

The International Bridge Act does not preclude the Texas Legislature from requiring that, under the circumstances presented here, the County must obtain the City's consent or approval before constructing an international toll bridge within the municipal territory. Pursuant to the Act,

9

the federal government has vested the state with authority over international toll bridges, *see* 33 U.S.C.A. § 535a, and the state may delegate this authority to its political subdivisions, as permitted by the constitution. *Robbins*, 268 S.W. at 918. The requirement of city approval, therefore, fits within the framework of the Act, rather than being contrary to it.

## CONCLUSION

After considering the historical and statutory framework in which section 364.001(a) was enacted, we conclude that the legislature intended to grant counties bordering the Rio Grande the power to construct toll bridges either outside of a city's municipal limits or inside the city's limits if the city consents or approves. The trial court, therefore, erred in declaring that section 364.001(a) authorizes Webb County to construct a toll bridge within the City of Laredo without the City's consent. The City's four issues addressing this error are sustained. Accordingly, we reverse the trial court's judgment and render judgment declaring that Webb County lacks the statutory authority to construct a toll bridge within the City of Laredo without the City's consent or approval.

We remand in part, however, for further proceedings to address the County's alternative claim that, if the City's consent is required, then the City's refusal to consent in this case unlawfully prevents competition based on bond covenants that violate public policy. The underlying declaratory judgment stated that, based on its finding that the County is authorized to construct the toll bridge in lieu of the City's consent, "it does not reach the alternative issues raised by Webb County." Because we reverse the trial court's ultimate finding and hold that the City's consent or

10

approval is required, we remand for the trial court to consider the County's alternative claim that the City's bond covenants are unlawful.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Reversed and Rendered in Part; Reversed and Remanded in Part

Filed:   December 1, 2005