*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



★ ★ ★  ★ ★ ★

# OPINION

Nos. 04-07-00669-CR, 04-07-00670-CR,
04-07-00671-CR & 04-07-00672-CR

The **STATE** of Texas,
Appellant

v.

Sophia D. **CHACON**, Grayce G. Benesch, & Charlene Piekarski,
Appellees

From the County Court at Law No. 3, Bexar County, Texas
Trial Court Nos. 115107, 115108, 115109, & 115111
Honorable David Rodriguez, Judge Presiding

Opinion by:  Phylis J. Speedlin, Justice
Dissenting opinion by:  Steven C. Hilbig, Justice

Sitting:  Alma L. López, Chief Justice
  Phylis J. Speedlin, Justice
  Steven C. Hilbig, Justice

Delivered and Filed:  September 17, 2008

AFFIRMED

This appeal concerns the validity of a penalty provision within a San Antonio city ordinance regulating sexually oriented businesses. The municipal court determined it did not have jurisdiction over violations of the portions of the ordinance in question and dismissed several cases. The State of Texas appealed the municipal court ruling to the county court, which affirmed the dismissals. The State then perfected an appeal to this court, arguing that the county court committed an error of law

in finding that the penalty provided within the city ordinance conflicts with Texas Local Government Code Chapter 243. Because the penalty provision in the city ordinance does directly conflict with section 243.010(b) of the Texas Local Government Code, we affirm the judgment of the municipal court dismissing the cases for lack of jurisdiction.

## BACKGROUND

On June 9, 2005, the City of San Antonio enacted Ordinance 101022 ("the Ordinance"), regulating human display establishments.[1] Section 21-300(1) of the Ordinance stated it was "unlawful for an individual to intentionally or knowingly appear in a state of nudity in a public place." SAN ANTONIO, TEX., Ordinance 101022 § 21-300(1) (repealed April 17, 2008, and reenacted as SAN ANTONIO, TEX. CODE art. IX § 21-205(a) (2008)). Section 21-701(7)(a) provided it was "unlawful for any person to intentionally or knowingly entertain or appear in a state of semi-nudity on the premises of a human display establishment unless the person is more than three (3) feet from any patron or customer." *Id*. § 21-701(7)(a) (reenacted as *id*. § 21-214(g)(1)). Any violation of the Ordinance was punishable by a fine not to exceed two thousand dollars.[2] *Id*. § 21-303(1) (reenacted as *id*. § 21-208(a)).

On March 29, 2006, appellees Sophia D. Chacon, Grayce G. Benesch, and Charlene Piekarski were working at a gentleman's club, XTC Cabaret, which the parties agree is a "human display

---

[1] Ordinance 101022 was repealed and reenacted on April 17, 2008. *See* SAN ANTONIO, TEX. CODE art. IX (2008). The provisions of Ordinance 101022 at issue in this appeal were reenacted in article IX just as they originally appeared. *Compare id.* §§ 21-300(1), 21-303(1), & 21-701(7)(a) *with* SAN ANTONIO, TEX., Ordinance 101022 §§ 21-205(a), 21-214(g)(1), & 21-208(a) (June 9, 2005). Because the alleged offenses occurred while Ordinance 101022 was in effect, we shall refer to the sections of that Ordinance, as do the parties, in conducting our review.

[2] Misdemeanors are generally referred to as Class A, B, or C misdemeanors. *See* TEX. PENAL CODE ANN. § 12.03 (Vernon 2003). An offense punishable by fine only is considered a Class C misdemeanor. TEX. PENAL CODE ANN. § 12.41(3) (Vernon 2003).

establishment" as defined by the Ordinance. SAN ANTONIO, TEX. CODE art. IX § 21-200 (2008). San

Antonio vice officers entered the club and observed appellees' dress and actions. Based on those

observations, the officers believed appellees were violating section 21-300(1), the nudity provision,

and section 21-701(7)(a), the three-foot provision. The officers cited appellees for violations of both

provisions.

Because the Ordinance provided that violations of sections 21-300(1) and 21-701(7)(a) were

punishable by fine only, appellees were set to appear in municipal court. *See* TEX. CODE CRIM.

PROC. ANN. art. 4.14 (Vernon 2005) (restricting municipal court jurisdiction to criminal cases in

which offense is punishable by fine only). Appellees filed a plea to the jurisdiction in each case

asserting the municipal court lacked jurisdiction. The municipal court agreed, finding that section

21-303(a), the punishment provision of the Ordinance, which provided for punishment of a violation

as a Class C misdemeanor, was void because it conflicts with section 243.010(b) of the Texas Local

Government Code, which declares that violations of municipal ordinances regulating sexually

oriented businesses are Class A misdemeanors.[3] *Compare* SAN ANTONIO, TEX., Ordinance 101022

§ 21-303(1) (repealed April 17, 2008, and reenacted as SAN ANTONIO, TEX. CODE art. IX § 21-208(a)

(2008)) *with* TEX. LOC. GOV'T CODE ANN. § 243.010(b) (Vernon 2005). Because a Class A

misdemeanor is beyond the jurisdiction of the municipal court, and because the pending charges

against the defendants for violating Ordinance 101022 could only be properly punished as a Class

A misdemeanor, the municipal court granted the appellees' pleas to the jurisdiction. The State

appealed to the county court, which, after reviewing the briefs submitted by the parties and hearing

---

[3] Class A misdemeanors are punishable by a fine of up to $4,000.00, jail time of up to one year, or both. TEX. PENAL CODE ANN. § 12.21 (Vernon 2003).

argument, sustained the ruling of the municipal court. The State then perfected its appeal to this Court.

## APPLICABLE LAW

In 1912, Texas adopted a constitutional amendment providing for home rule in cities with populations over 5,000. TEX. CONST. art. XI, § 5 interp. commentary. This amendment, known as the "Home Rule Amendment," essentially fashioned such cities into "mini-legislatures," giving them "full authority to do anything the legislature could theretofore have authorized them to do." *Forwood v. City of Taylor*, 147 Tex. 161, 214 S.W.2d 282, 286 (1948); *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 26 n.5 (Tex. 2003). Home rule cities therefore derive their powers not from the Legislature, but from the Texas Constitution. TEX. CONST. art. XI, § 5; *see* TEX. LOC. GOV'T CODE ANN. §§ 51.071-.072 (Vernon 2008) (providing that home rule municipality has full power of local self government); *see also City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007). These cities possess "the full power of self government and look to the Legislature not for grants of power, but only for limitations on their power." *In re Sanchez*, 81 S.W.3d 794, 796 (Tex. 2002) (quoting *Dallas Merchant's & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 490-91 (Tex. 1993)). Home rule cities have "all the powers of the state not inconsistent with the Constitution, the general laws, or the city's charter." *City of Galveston*, 217 S.W.3d at 469 (quoting *Proctor v. Andrews*, 972 S.W.2d 729, 733 (Tex. 1998)). These "broad powers" may be limited by the Legislature only when its intent to do so "appears with unmistakable clarity." *Proctor*, 972 S.W.2d at 733.

Home rule city ordinances are presumed valid. *Sanchez*, 81 S.W.3d at 796. A state law preempts a home rule city ordinance only to the extent the state law is irreconcilably inconsistent. *Id.* That the Legislature has enacted a law addressing the subject matter in question does not mean the subject matter is completely preempted. *City of Richardson v. Responsible Dog Owners of Texas*, 794 S.W.2d 17, 19 (Tex. 1990). The state law and city ordinance will not be held "repugnant to each other" if the court can reach a reasonable construction that leaves both in effect. *Sanchez*, 81 S.W.3d at 796. And, if there is no conflict, the ordinance is not void. *Responsible Dog Owners*, 794 S.W.2d at 19.

The City of San Antonio is a home rule city. *Tex. River Barges v. City of San Antonio*, 21 S.W.3d 347, 352 (Tex. App.–San Antonio 2000, pet. denied). "San Antonio is not required to look to the legislature for a grant of power to act, but only to ascertain if the legislature has placed any limitations on the city's constitutional power." *Burch v. City of San Antonio*, 518 S.W.2d 540, 543 (Tex. 1975). The courts should restrict San Antonio's autonomy only if the Legislature clearly and unmistakably intended to withdraw a particular subject from the City's domain. *See Lower Colorado River Auth. v. City of San Marcos*, 523 S.W.2d 641, 645 (Tex. 1975).

## DISCUSSION

The issue in this appeal is not whether the City of San Antonio can regulate sexually oriented businesses. Instead, the narrow question presented is whether the trial court correctly determined that the enforcement provision within the Ordinance directly conflicts with the enforcement provision contained within Chapter 243 of the Texas Local Government Code, and is therefore preempted. The State argues both statutes can be harmonized to operate together because Chapter 243 applies in only

specified areas and does not limit the power of the City to regulate sexually oriented businesses in other areas.

We begin our analysis by examining the state statute at issue. Generally, we construe statutes as written and, when possible, ascertain the legislative intent from language used within the statute. *See Marcus Cable Assocs., L.P. v. Krohn,* 90 S.W.3d 697, 706 (Tex. 2002). We also construe the statute as a whole and will not give one provision a meaning which is out of harmony or inconsistent with other provisions. *Id.* Applying those principles to Chapter 243 of the Texas Local Government Code, it is apparent that the Legislature intended to provide a broad framework for regulation of certain "sexually oriented businesses" while authorizing municipalities and counties to enact ordinances within that framework. *See, e.g.,* TEX. LOC. GOV'T CODE ANN. § 243.001(a) (Vernon 2005) ("unrestricted operation of certain sexually oriented businesses may be detrimental to the public health, safety, and welfare"); § 243.001(b) ("chapter does not diminish the authority of a local government to regulate sexually oriented businesses with regard to any matters"); § 243.003(a) ("municipality . . . may adopt regulations . . . to promote the public health, safety, or welfare"); § 243.006(a)(1) ("sexually oriented businesses may be [ ] restricted to particular areas"); § 243.007(a) (municipality may require owner or operator of sexually oriented business to obtain a license or other permit); § 243.008 (municipality may inspect a sexually oriented business); § 243.009 (municipality may impose fees). "Chapter 243 is the enabling legislation that permits municipalities to regulate sexually oriented businesses." *Haddad v. State,* 9 S.W.3d 454, 459 (Tex. App.—Houston [1st Dist.] 1999, no pet.). In addition to the provisions authorizing municipalities and counties to regulate sexually oriented businesses, the Legislature crafted an enforcement provision. TEX. LOC. GOV'T

CODE ANN. § 243.010 (Vernon 2005). With unmistakable clarity, the Legislature defined the offense

and set the punishment as a Class A misdemeanor:

> A person commits an offense if the person violates a municipal or county regulation adopted under this chapter. **An offense under this subsection is a Class A misdemeanor.**

TEX. LOC. GOV'T CODE ANN. § 243.010(b) (emphasis added); s*ee also Thompson v. State,* 44 S.W.3d

171, 175 (Tex. App.—Houston [14th Dist.] 2001, no pet.); *Flores v. State*, 33 S.W.3d 907, 915 (Tex.

App.—Houston [14th Dist.] 2000, pet. ref'd.); *State v. Xoticas-Laredo, Inc.,* No. 04-03-00584-CR,

2004 WL 33054, at *1 (Tex. App.—San Antonio, Jan. 7, 2004, no pet.) (mem. op.) (not designated

for publication).

Accordingly, the issue before us today is whether a city can enact an ordinance under the

authority of Chapter 243, but impose a lesser fine or penalty than a Class A misdemeanor for

violations of the ordinance.[4] The State concedes that the Ordinance at issue was enacted by the City

in part under the authority of Chapter 243 of the Texas Local Government Code, but argues that it was

also enacted "under" the city's inherent authority as a home rule city. In essence, the State contends

that section 243.010(b) is an "additional grant of power" to the City to enhance a violation from a

Class C misdemeanor to a Class A misdemeanor for **only** the "specified violations" enumerated in

Chapter 243 — particularly, location limits and owner permit requirements. *See* TEX. LOC. GOV'T

CODE ANN. §§ 243.006, 243.007. Otherwise, the State contends the City retains its inherent power

---

[4] The enforcement provision at issue in the Ordinance reads, "[t]he violation of any provision of this article, including the doing of anything which is herein prohibited or declared to be unlawful or the failure to do anything or perform any duty which is required herein, shall be punishable as a class C misdemeanor with a fine not to exceed two thousand dollars ($2,000.00), as provided by Section 54.001 of the Local Government Code." *See* Ordinance 101022, § 21-303.

as a home rule city to impose a lesser fine or penalty for the violation of an ordinance that governs public health and sanitation. *See* TEX. LOC. GOV'T CODE ANN. § 54.001(b) (Vernon 2008) (fine or penalty for violation of ordinance governing public health not to exceed $2,000). In other words, the State argues that punishment for violations of the city ordinance are "fact specific," depending on the "respective enabling statutes." The State concedes that if the offenses committed by appellees had been location or owner permit violations then they would "clearly be Class A misdemeanor offenses." However, because Chapter 243 does not regulate the conduct of employees of sexually oriented businesses, the City could set punishment at a Class C misdemeanor for violations of the nudity and the three-foot rule as allowed under its inherent authority. *See id.* We respectfully disagree with the State's underlying premise that the enforcement provision of section 243.010(b) applies **only** to "specified violations" enumerated within Chapter 243.

Although the State asserts the enforcement provision of Chapter 243 applies only to sections 243.006(a) (municipality may restrict location of sexually oriented businesses) and 243.007(a) (municipality may require owner or operator of sexually oriented business to obtain license or permit), the State cites no legal authority for this proposition, nor does any provision within Chapter 243 support the State's argument. When enacting Chapter 243, the Legislature expressly found that "the unrestricted operation of certain sexually oriented businesses may be detrimental to the public health, safety, and welfare by contributing to the decline of residential and business neighborhoods and the growth of criminal activity." *Id*. § 243.001(a). Accordingly, the Legislature granted local governments broad authority to "adopt regulations regarding sexually oriented businesses as the municipality . . . considers necessary to promote the public health, safety, or welfare." *Id*.

§ 243.003(a). Neither the stated purpose nor the broad grant of authority contained within section 243.003 limits the type of municipal regulations contemplated under the Chapter, as suggested by the State. Therefore, we disagree that section 243.010(b) applies **only** to location or owner permit violations. Further, we do not agree with the State that Chapter 243 does not contemplate regulating the conduct of employees of sexually oriented businesses. *See Ex Parte Smalley,* 156 S.W.3d 608, 610-611 (Tex. App.—Dallas 2004, pet. dism'd); *Thompson,* 44 S.W.3d at 176; *Flores,* 33 S.W.3d at 916; *Haddad,* 9 S.W.3d at 458.

As a home rule municipality, the City of San Antonio has broad powers of self government — provided that no ordinance "shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State." TEX. CONST. art XI, § 5. In this case, the applicable enforcement provision in the Ordinance sets punishment as a Class C misdemeanor, which directly conflicts with section 243.010(b) establishing punishment for a violation of a municipal regulation as a Class A misdemeanor. TEX. LOC. GOV'T CODE ANN. § 243.010(b). Had the Legislature intended a broad range of punishment for an offense under Chapter 243, it could have easily provided that an offense was punishable "**up to** a Class A misdemeanor" — reserving the municipality's authority to punish a violation as either a Class A, Class B, or Class C misdemeanor. However, the Legislature did not say that; instead, it plainly provided that an offense "**is** a Class A misdemeanor." *Id.*

Here, as conceded by the State, the City's Ordinance was enacted under the broad grant of authority provided by Chapter 243 in an effort to regulate sexually oriented businesses. Because the Ordinance contains an enforcement provision (Class C misdemeanor) that directly conflicts with and

is, therefore, inconsistent with the enforcement provision of a state statute (Class A misdemeanor), we hold that the City's enforcement provision is preempted, and thus unenforceable. *See Dallas Merchant's,* 852 S.W.2d at 491. Accordingly, we affirm the judgment of the municipal court dismissing the cases for lack of jurisdiction.

Phylis J. Speedlin, Justice

PUBLISH