The STATE of Texas, Appellant,

v.

Sophia D. CHACON, Grayce G. Benesch, & Charlene Piekarski, Appellees.

Nos. 04–07–00669–CR to 04–07–00672–CR.

Court of Appeals of Texas, San Antonio.

Sept. 17, 2008.

Rehearing Overruled Oct. 8, 2008.

Christopher J. Hebner, Prosecutor for The City of San Antonio, San Antonio, TX, for Appellant.

James O. Deegear, III, Law Office of James O. Deegear, III, San Antonio, TX, for Appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, PHYLIS J. SPEEDLIN, Justice, STEVEN C. HILBIG, Justice.

## OPINION

Opinion by PHYLIS J. SPEEDLIN, Justice.

This appeal concerns the validity of a penalty provision within a San Antonio city ordinance regulating sexually oriented businesses. The municipal court determined it did not have jurisdiction over violations of the portions of the ordinance in question and dismissed several cases. The State of Texas appealed the municipal court ruling to the county court, which affirmed the dismissals. The State then perfected an appeal to this court, arguing that the county court committed an error of law in finding that the penalty provided within the city ordinance conflicts with Texas Local Government Code Chapter 243. Because the penalty provision in the city ordinance does directly conflict with section 243.010(b) of the Texas Local Government Code, we affirm the judgment of the municipal court dismissing the cases for lack of jurisdiction.

### BACKGROUND

On June 9, 2005, the City of San Antonio enacted Ordinance 101022 ("the Ordinance"), regulating human display establishments.[1] Section 21–300(1) of the Ordinance stated it was "unlawful for an individual to intentionally or knowingly appear in a state of nudity in a public place." SAN ANTONIO, TEX., Ordinance 101022 § 21–300(1) (repealed April 17, 2008, and reenacted as SAN ANTONIO, TEX.

CODE art. IX § 21–205(a) (2008)). Section 21–701(7)(a) provided it was "unlawful for any person to intentionally or knowingly entertain or appear in a state of semi-nudity on the premises of a human display establishment unless the person is more than three (3) feet from any patron or customer." *Id.* § 21–701(7)(a) (reenacted as *id.* § 21–214(g)(1)). Any violation of the Ordinance was punishable by a fine not to exceed two thousand dollars.[2] *Id.* § 21–303(1) (reenacted as *id.* § 21–208(a)).

On March 29, 2006, appellees Sophia D. Chacon, Grayce G. Benesch, and Charlene Piekarski were working at a gentleman's club, XTC Cabaret, which the parties agree is a "human display establishment" as defined by the Ordinance. SAN ANTONIO, TEX.CODE art. IX § 21–200 (2008). San Antonio vice officers entered the club and observed appellees' dress and actions. Based on those observations, the officers believed appellees were violating section 21–300(1), the nudity provision, and section 21–701(7)(a), the three-foot provision. The officers cited appellees for violations of both provisions.

Because the Ordinance provided that violations of sections 21–300(1) and 21–701(7)(a) were punishable by fine only, appellees were set to appear in municipal court. *See* TEX.CODE CRIM. PROC. ANN. art. 4.14 (Vernon 2005) (restricting municipal court jurisdiction to criminal cases in which offense is punishable by fine only). Appellees filed a plea to the jurisdiction in

---

1. Ordinance 101022 was repealed and reenacted on April 17, 2008. *See* SAN ANTONIO, TEX.CODE art. IX (2008). The provisions of Ordinance 101022 at issue in this appeal were reenacted in article IX just as they originally appeared. *Compare id.* §§ 21–300(1), 21–303(1), & 21–701(7)(a) *with* SAN ANTONIO, TEX., Ordinance 101022 §§ 21–205(a), 21–214(g)(1), & 21–208(a) (June 9, 2005). Because the alleged offenses occurred while Ordinance 101022 was in effect, we shall refer

to the sections of that Ordinance, as do the parties, in conducting our review.

2. Misdemeanors are generally referred to as Class A, B, or C misdemeanors. *See* TEX. PENAL CODE ANN. § 12.03 (Vernon 2003). An offense punishable by fine only is considered a Class C misdemeanor. TEX. PENAL CODE ANN. § 12.41(3) (Vernon 2003).

each case asserting the municipal court lacked jurisdiction. The municipal court agreed, finding that section 21–303(a), the punishment provision of the Ordinance, which provided for punishment of a violation as a Class C misdemeanor, was void because it conflicts with section 243.010(b) of the Texas Local Government Code, which declares that violations of municipal ordinances regulating sexually oriented businesses are Class A misdemeanors.[3] *Compare* SAN ANTONIO, TEX., Ordinance 101022 § 21–303(1) (repealed April 17, 2008, and reenacted as SAN ANTONIO, TEX. CODE art. IX § 21–208(a) (2008)) with TEX. LOC. GOV'T CODE ANN. § 243.010(b) (Vernon 2005). Because a Class A misdemeanor is beyond the jurisdiction of the municipal court, and because the pending charges against the defendants for violating Ordinance 101022 could only be properly punished as a Class A misdemeanor, the municipal court granted the appellees' pleas to the jurisdiction. The State appealed to the county court, which, after reviewing the briefs submitted by the parties and hearing argument, sustained the ruling of the municipal court. The State then perfected its appeal to this Court.

## APPLICABLE LAW

In 1912, Texas adopted a constitutional amendment providing for home rule in cities with populations over 5,000. TEX. CONST. art. XI, § 5 interp. commentary. This amendment, known as the "Home Rule Amendment," essentially fashioned such cities into "mini-legislatures," giving them "full authority to do anything the legislature could theretofore have authorized them to do." *Forwood v. City of Taylor*, 147 Tex. 161, 214 S.W.2d 282, 286 (1948); *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 26 n. 5

(Tex.2003). Home rule cities therefore derive their powers not from the Legislature, but from the Texas Constitution. TEX. CONST. art. XI, § 5; *see* TEX. LOC. GOV'T CODE ANN. §§ 51.071–.072 (Vernon 2008) (providing that home rule municipality has full power of local self government); *see also City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex.2007). These cities possess "the full power of self government and look to the Legislature not for grants of power, but only for limitations on their power." *In re Sanchez*, 81 S.W.3d 794, 796 (Tex.2002) (quoting *Dallas Merchant's & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 490–91 (Tex.1993)). Home rule cities have "all the powers of the state not inconsistent with the Constitution, the general laws, or the city's charter." *City of Galveston*, 217 S.W.3d at 469 (quoting *Proctor v. Andrews*, 972 S.W.2d 729, 733 (Tex.1998)). These "broad powers" may be limited by the Legislature only when its intent to do so "appears with unmistakable clarity." *Proctor*, 972 S.W.2d at 733.

Home rule city ordinances are presumed valid. *Sanchez*, 81 S.W.3d at 796. A state law preempts a home rule city ordinance only to the extent the state law is irreconcilably inconsistent. *Id.* That the Legislature has enacted a law addressing the subject matter in question does not mean the subject matter is completely preempted. *City of Richardson v. Responsible Dog Owners of Texas*, 794 S.W.2d 17, 19 (Tex.1990). The state law and city ordinance will not be held "repugnant to each other" if the court can reach a reasonable construction that leaves both in effect. *Sanchez*, 81 S.W.3d at 796. And, if there is no conflict, the ordinance is not void. *Responsible Dog Owners*, 794 S.W.2d at 19.

---

**3.** Class A misdemeanors are punishable by a fine of up to $4,000.00, jail time of up to one year, or both. TEX. PENAL CODE ANN. § 12.21 (Vernon 2003).

■ The City of San Antonio is a home rule city. *Tex. River Barges v. City of San Antonio*, 21 S.W.3d 347, 352 (Tex. App.-San Antonio 2000, pet. denied). "San Antonio is not required to look to the legislature for a grant of power to act, but only to ascertain if the legislature has placed any limitations on the city's constitutional power." *Burch v. City of San Antonio*, 518 S.W.2d 540, 543 (Tex.1975). The courts should restrict San Antonio's autonomy only if the Legislature clearly and unmistakably intended to withdraw a particular subject from the City's domain. *See Lower Colorado River Auth. v. City of San Marcos*, 523 S.W.2d 641, 645 (Tex. 1975).

### DISCUSSION

The issue in this appeal is not whether the City of San Antonio can regulate sexually oriented businesses. Instead, the narrow question presented is whether the trial court correctly determined that the enforcement provision within the Ordinance directly conflicts with the enforcement provision contained within Chapter 243 of the Texas Local Government Code, and is therefore preempted. The State argues both statutes can be harmonized to operate together because Chapter 243 applies in only specified areas and does not limit the power of the City to regulate sexually oriented businesses in other areas.

■ We begin our analysis by examining the state statute at issue. Generally, we construe statutes as written and, when possible, ascertain the legislative intent from language used within the statute. *See Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 706 (Tex.2002). We also construe the statute as a whole and will not give one provision a meaning which is out of harmony or inconsistent with other provisions. *Id.* Applying those

principles to Chapter 243 of the Texas Local Government Code, it is apparent that the Legislature intended to provide a broad framework for regulation of certain "sexually oriented businesses" while authorizing municipalities and counties to enact ordinances within that framework. *See, e.g.,* TEX. LOC. GOV'T CODE ANN. § 243.001(a) (Vernon 2005) ("unrestricted operation of certain sexually oriented businesses may be detrimental to the public health, safety, and welfare"); § 243.001(b) ("chapter does not diminish the authority of a local government to regulate sexually oriented businesses with regard to any matters"); § 243.003(a) ("municipality ... may adopt regulations ... to promote the public health, safety, or welfare"); § 243.006(a)(1) ("sexually oriented businesses may be [ ] restricted to particular areas"); § 243.007(a) (municipality may require owner or operator of sexually oriented business to obtain a license or other permit); § 243.008 (municipality may inspect a sexually oriented business); § 243.009 (municipality may impose fees). "Chapter 243 is the enabling legislation that permits municipalities to regulate sexually oriented businesses." *Haddad v. State*, 9 S.W.3d 454, 459 (Tex.App.-Houston [1st Dist.] 1999, no pet.). In addition to the provisions authorizing municipalities and counties to regulate sexually oriented businesses, the Legislature crafted an enforcement provision. TEX. LOC. GOV'T CODE ANN. § 243.010 (Vernon 2005). With unmistakable clarity, the Legislature defined the offense and set the punishment as a Class A misdemeanor:

> A person commits an offense if the person violates a municipal or county regulation adopted under this chapter. **An offense under this subsection is a Class A misdemeanor.**

TEX. LOC. GOV'T CODE ANN. § 243.010(b) (emphasis added); *see also Thompson v.*

*State*, 44 S.W.3d 171, 175 (Tex.App.-Houston [14th Dist.] 2001, no pet.); *Flores v. State*, 33 S.W.3d 907, 915 (Tex.App.-Houston [14th Dist.] 2000, pet. ref d.); *State v. Xoticas–Laredo, Inc.*, No. 04–03–00584–CR, 2004 WL 33054, at *1 (Tex.App.-San Antonio, Jan.7, 2004, no pet.) (mem.op.) (not designated for publication).

 Accordingly, the issue before us today is whether a city can enact an ordinance under the authority of Chapter 243, but impose a lesser fine or penalty than a Class A misdemeanor for violations of the ordinance.[4] The State concedes that the Ordinance at issue was enacted by the City in part under the authority of Chapter 243 of the Texas Local Government Code, but argues that it was also enacted "under" the city's inherent authority as a home rule city. In essence, the State contends that section 243.010(b) is an "additional grant of power" to the City to enhance a violation from a Class C misdemeanor to a Class A misdemeanor for **only** the "specified violations" enumerated in Chapter 243—particularly, location limits and owner permit requirements. *See* Tex. Loc. Gov't Code Ann. §§ 243.006, 243.007. Otherwise, the State contends the City retains its inherent power as a home rule city to impose a lesser fine or penalty for the violation of an ordinance that governs public health and sanitation. *See* Tex. Loc. Gov't Code Ann. § 54.001(b) (Vernon 2008) (fine or penalty for violation of ordinance governing public health not to exceed $2,000). In other words, the State argues that punishment for violations of the city ordinance are "fact specific," depending on the "respective enabling statutes." The State concedes that if the offenses commit-

ted by appellees had been location or owner permit violations then they would "clearly be Class A misdemeanor offenses." However, because Chapter 243 does not regulate the conduct of employees of sexually oriented businesses, the City could set punishment at a Class C misdemeanor for violations of the nudity and the three-foot rule as allowed under its inherent authority. *See id.* We respectfully disagree with the State's underlying premise that the enforcement provision of section 243.010(b) applies **only** to "specified violations" enumerated within Chapter 243.

Although the State asserts the enforcement provision of Chapter 243 applies only to sections 243.006(a) (municipality may restrict location of sexually oriented businesses) and 243.007(a) (municipality may require owner or operator of sexually oriented business to obtain license or permit), the State cites no legal authority for this proposition, nor does any provision within Chapter 243 support the State's argument. When enacting Chapter 243, the Legislature expressly found that "the unrestricted operation of certain sexually oriented businesses may be detrimental to the public health, safety, and welfare by contributing to the decline of residential and business neighborhoods and the growth of criminal activity." *Id.* § 243.001(a). Accordingly, the Legislature granted local governments broad authority to "adopt regulations regarding sexually oriented businesses as the municipality ... considers necessary to promote the public health, safety, or welfare." *Id.* § 243.003(a). Neither the stated purpose nor the broad grant of

---

4. The enforcement provision at issue in the Ordinance reads, "[t]he violation of any provision of this article, including the doing of anything which is herein prohibited or declared to be unlawful or the failure to do anything or perform any duty which is re-

quired herein, shall be punishable as a class C misdemeanor with a fine not to exceed two thousand dollars ($2,000.00), as provided by Section 54.001 of the Local Government Code." *See* Ordinance 101022, § 21–303.

authority contained within section 243.003 limits the type of municipal regulations contemplated under the Chapter, as suggested by the State. Therefore, we disagree that section 243.010(b) applies **only** to location or owner permit violations. Further, we do not agree with the State that Chapter 243 does not contemplate regulating the conduct of employees of sexually oriented businesses. *See Ex Parte Smalley,* 156 S.W.3d 608, 610–611 (Tex.App.-Dallas 2004, pet. dism'd); *Thompson,* 44 S.W.3d at 176; *Flores,* 33 S.W.3d at 916; *Haddad,* 9 S.W.3d at 458.

As a home rule municipality, the City of San Antonio has broad powers of self government—provided that no ordinance "shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State." Tex. Const. art XI, § 5. In this case, the applicable enforcement provision in the Ordinance sets punishment as a Class C misdemeanor, which directly conflicts with section 243.010(b) establishing punishment for a violation of a municipal regulation as a Class A misdemeanor. Tex. Loc. Gov't Code Ann. § 243.010(b). Had the Legislature intended a broad range of punishment for an offense under Chapter 243, it could have easily provided that an offense was punishable "**up to** a Class A misdemeanor"— reserving the municipality's authority to punish a violation as either a Class A, Class B, or Class C misdemeanor. However, the Legislature did not say that; instead, it plainly provided that an offense "is a Class A misdemeanor." *Id.*

Here, as conceded by the State, the City's Ordinance was enacted under the broad grant of authority provided by Chapter 243 in an effort to regulate sexually oriented businesses. Because the Ordinance contains an enforcement provision (Class C misdemeanor) that directly conflicts with and is, therefore, inconsistent with the enforcement provision of a state statute (Class A misdemeanor), we hold that the City's enforcement provision is preempted, and thus unenforceable. *See Dallas Merchant's,* 852 S.W.2d at 491. Accordingly, we affirm the judgment of the municipal court dismissing the cases for lack of jurisdiction.

Dissenting opinion by: STEVEN C. HILBIG, Justice.

STEVEN C. HILBIG, Justice, dissenting.

I respectfully dissent from the majority's determination that there is an irreconcilable conflict between Chapter 243 of the Texas Local Government Code and the City of San Antonio's ("the City") Ordinance with regard to enforcement for violations of regulations governing sexually oriented businesses, compelling a finding of preemption.

Relying upon *Dallas Merchant's & Concessionaire's Ass'n v. City of Dallas,* appellees argue the Ordinance is void because its enforcement provision, section 21–303(1), provided for a penalty different from that prescribed by section 243.010(b) of the Local Government Code. *See* 852 S.W.2d 489 (Tex.1993); *see also Abrams v. State,* 563 S.W.2d 610, 615 (Tex.Crim.App. 1978) (holding, based on language of article XI, section 5 of constitution, ordinance that conflicted with statute was void). Their argument suggests, and the majority agrees, the Ordinance was void because the Texas Legislature preempted regulation in this area and the City's action in passing an ordinance in conflict with the State's regulation—classifying a violation of the ordinance a Class C rather than a Class A misdemeanor—renders the Ordinance void. The State disagrees, arguing that by its very terms Chapter 243 contains clear language establishing the State

of Texas did not intend to preempt home-rule cities from enacting ordinances that regulate sexually oriented businesses. The majority clearly agrees with appellees, but I agree with the State.

If the State of Texas intends to preempt an area of regulation, including a subject matter usually encompassed by the broad powers of a home-rule city, it must do so with "unmistakable clarity." *Dallas Merchant's*, 852 S.W.2d at 491. In Dallas Merchant's, the supreme court decided the passage of the Texas Alcoholic Beverage Code by the Texas Legislature prevented the City of Dallas from enacting ordinances regulating the areas where businesses would be allowed to sell alcohol. The court noted that section 109.57(b) of the code stated as follows:

> It is the intent of the legislature that this code shall exclusively govern the regulation of alcoholic beverages in this state, and that except as permitted by this code, a governmental entity of this state may not discriminate against a business holding a license or permit under this code.

*Dallas Merchant's*, 852 S.W.2d at 491. Given the unmistakable clarity of the Legislature's intent, the court held the city ordinances to be invalid as preempted by the State. *Id.* at 491, 493.

Here, a plain reading of section 243.001(b) demonstrates with "unmistakable clarity" the Legislature did not intend to preempt regulation of sexually oriented businesses. "This chapter does not diminish the authority of a local government to regulate sexually oriented businesses with regard to any matters." TEX. LOC. GOV'T CODE ANN. § 243.001(b) (Vernon 2005). Accordingly, given the mandates of *Dallas Merchant's* and its progeny, it cannot be said that the Ordinance is void because the Legislature preempted regulation of sexually oriented businesses, precluding home-rule cities from exercising its inherent powers.

Nor is the Ordinance void because of a conflict with state law as found in *Abrams v. State*, 563 S.W.2d 610 (Tex.Crim.App. 1978). In *Abrams*, the court of criminal appeals considered the validity of a city ordinance that created the offense of speeding where the offense was defined as driving at a rate of speed greater than thirty miles per hour unless otherwise posted. *Id.* at 613. The court noted the Texas Legislature had enacted an offense that defined speeding as driving a vehicle at a "speed greater that is reasonable and prudent under the circumstances then existing ..." *Id.* Because the ordinance defined an offense by way of a rigid speed limit, it conflicted with the state law defining speeding in a different manner. *Id.* at 615. The court held the ordinance to be void because of this conflict. *Id.* Here, Chapter 243 does not define a criminal offense but rather grants authority to local governments to define an offense through appropriate ordinances.

*Ex parte Devereaux*, 389 S.W.2d 672 (Tex.Crim.App.1965) is more analogous to the present case. In *Devereaux*, the court of criminal appeals held a city ordinance relating to speeding to be invalid as to its punishment provisions because the city penalty was from one to two hundred dollars whereas the state penalty was a fine "up to two hundred dollars." *Id.* at 673. Accordingly, under *Devereaux*, an ordinance is invalid if both the ordinance and the statute define an offense, but the ordinance sets a punishment different from that provided by the statute. *See id.* Here, unlike in *Devereaux*, there is no state statute criminalizing the same conduct prohibited by the Ordinance. Based on the logic in *Devereaux*, there is no conflict between the enforcement provision of the Ordinance and section 243.010(b).

Moreover, to interpret section 243.010(b) as creating a mandate that every ordinance relating to a sexually oriented business must be a Class A misdemeanor would render meaningless the clear and express language of section 243.001(b), which is contrary to long-standing rules of statutory construction. *See, e.g., Mid-Century Ins. Co. of Tex. v. Ademaj,* 243 S.W.3d 618, 621 (Tex.2007) (mandating that for purposes of statutory construction courts must read statute as a whole and interpret it to give effect to every part); *City of LaPorte v. Barfield,* 898 S.W.2d 288, 292 (Tex.1995) (holding courts cannot read statutory language as pointless if it is susceptible to another construction).

The majority's interpretation ignores the expressed legislative intent documented in the legislative history of Chapter 243. The primary rule in statutory interpretation is to give effect to legislative intent. *Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 383 (Tex.2000). Courts are to construe statutes as written and, if possible, ascertain legislative intent from the language of the statute. *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex.2001). While courts must look to the plain and common meaning of the words in the statute to determine intent, if there is an ambiguity, rules of construction and extrinsic aids can be used to resolve the conflict. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865–66 (Tex.1999). Given the perceived conflict between Local Government Code sections 243.001(b) and 243.010(b), we may look to the legislative history for guidance. *See Fleming Foods of Tex., Inc. v. Rylander,* 6 S.W.3d 278, 284 (Tex.1999) (holding legislative history cannot be used to disregard or alter express statutory terms when their meaning is clear in context of entire code); *see also* TEX. GOV'T CODE ANN. § 311.023(3) (Vernon 2005) (stating that in construing statute, court may consider legislative history).

When Senate Bill 525, the bill containing the current version of Chapter 243 of the Texas Local Government Code, was presented to the Senate Intergovernmental Relations Committee, Senator Frank Tejeda, the sponsoring senator, testified the bill was being presented to give counties the authority to regulate sexually oriented businesses. Municipal and County Authority to Regulate Sexually Oriented Business: Hearings on Tex. S.B. 525 Before the Senate Committee on Intergovernmental Relations, 71st Leg., R.S. (Feb. 21, 1989) (considering bill in public hearing) (transcript available from Senate Staff Services Office). Senator Tejeda told the committee home-rule cities already had such authority, but in response to city ordinances regulating sexually oriented businesses, the businesses were moving beyond the city's control and into the county. *Id.;* Municipal and County Authority to Regulate Sexually Oriented Business: Hearings on Tex. S.B. 525 Before the Senate Committee on Intergovernmental Relations, 71st Leg., R.S. (March 2, 1989) (bill read second time, amended, read third time, voted out of committee) (transcript available from Senate Staff Services Office). Chapter 243 would give counties (and general-rule cities) the same authority as home-rule cities. *Id.* When questioned about the effect of the bill and whether it would affect the power already held by home-rule cities, the sponsoring senator stated:

> And as we have discussed ... this bill is not intended to preempt any other, you know, for state preemption. We do not want to preempt any of the local rules or regulations or ordinances or orders that may already be in place. For example, the City of Dallas, we do not want to preempt or in any way diminish what they have already done.

* * *

We do not want to diminish or in any way preempt. We want to expand and perhaps give them [cities] additional authority to be able to deal with these types of businesses.

Municipal and County Authority to Regulate Sexually Oriented Business: Hearings on Tex. S.B. 525 Before the Senate Committee on Intergovernmental Relations, 71st Leg., R.S. (March 2, 1989) (bill read second time, amended, read third time, voted out of committee) (transcript available from Senate Staff Services Office).

Senator Hector Uribe questioned Senator Tejeda concerning the interplay of any county ordinance enacted under the statute with an existing city regulation:

Senator Uribe: ... as I glance at the reading indicates to me that both the Commissioners Court and the municipality are given identical authority and that the Commissioners Court's authority would extend to areas within the municipality. Am I reading that correctly? Could a Commissioners Court adopt an order that is more restrictive that a municipality?

Senator Tejeda: No, not within the incorporated boundaries of whatever city or municipality may be there. We're talking about unincorporated areas.

Municipal and County Authority to Regulate Sexually Oriented Business: Hearings on Tex. S.B. 525 Before the Senate Committee on Intergovernmental Relations, 71st Leg., R.S. (Feb. 21, 1989) (considering bill in public hearing) (transcript available from Senate Staff Services Office). This exchange makes it very clear the Legislature intended section 241.001(b) be given its full meaning and Chapter 243 does not diminish the existing authority of a home-rule city to regulate sexually oriented businesses. The City had the authority to pass ordinances regulating sexually oriented businesses, setting punishment for violations as Class C misdemeanors, before the passage of Chapter 243 and continues to have such authority. The legislative history establishes the Legislature's intent not to disturb this pre-existing authority, but to enhance it by allowing the City to punish violations of ordinances regulating sexually oriented businesses, if desired, as a Class A misdemeanor.[1]

Interpreting Chapter 243, specifically section 243.010(b), as an additional grant of authority, rather than a limitation as stated in the legislative history, harmonizes the provision with section 243.001(b), which states Chapter 243 is not to diminish the authority of a local government to regulate sexually oriented businesses with regard to any matters, and avoids rendering section 243.010(b) meaningless. The Texas Legislature did not intend to preempt the regulation of sexually oriented businesses. The City of San Antonio, relying on its authority as a home-rule city, was free to pass the ordinance in question and set the penalty as a Class C misdemeanor. Given the City's authority,

1. There is also a practical aspect to this punishment scheme. By allowing a home-rule city to continue to set punishment of an ordinance as a Class C misdemeanor, a city could control the prosecution policy for such violations because the city controls the person authorized to prosecute such violations—the city attorney. Likewise, when the county establishes an ordinance, the violation of which is a Class A misdemeanor, the prosecution is controlled by a state officer—either the county attorney or district attorney with authority to prosecute misdemeanor offenses. If all violations were Class A misdemeanors, a city would lose control of the prosecution and be forced to rely upon the prosecution policies set by the state officer. This would diminish a home-rule city's inherent authority, which the Legislature clearly did not intend to do.

the municipal court had jurisdiction in this matter. It was error for that court to grant appellees' plea to the jurisdiction. Accordingly, I would sustain the State's issue, reverse the judgment of the county court at law, and remand this matter to the municipal court for further proceedings.