ACCEPTED
01-14-00783-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
5/11/2015 1:37:15 PM
CHRISTOPHER PRINE
CLERK

## APPEAL NO. 01-14-00783-CV

In the
Court of Appeals
For the
First District of Texas

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

5/11/2015 1:37:15 PM

CHRISTOPHER A. PRINE
Clerk

----------------------------

On Appeal From:
151st Judicial District Court
Harris County, Texas
Cause No. 2013-75695

----------------------------

State of Texas
*Appellant*

v.

David B. Wilson
*Appellee*

----------------------------

## APPELLEE'S BRIEF

*/s/ Keith Gross*
Keith A. Gross
State Bar No. 24027357
250 Park Ave
League City, Texas 77573
832-932-5970
832-932-5688 FAX
ATTORNEY FOR APPELLEE

## ORAL ARGUMENT NOT REQUESTED

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to TEX. R. APP. P. 39.7, Appellant does not request oral argument

## PARTIES

APPELLEE:     David Buren Wilson

COUNSEL AT TRIAL:

         Keith A. Gross
         SBN 24027357
         250 Park Ave
         League City, Texas 77573
         832-932-5970
         832-932-5688 FAX
         Attorney for Appellant

APPELLANT:     State of Texas

COUNSEL AT TRIAL:   Douglas Ray
         16599300
         1019 Congress, 15th Floor
         Houston, Texas 77002

COUNSEL ON APPEAL:  Barbara Smith Armstrong
         24055112
         1019 Congress, 15th Floor
         Houston, Texas 77002

PRESIDING JUDGE:   Mike Englehart:  151st  District Court

**TABLE OF CONTENTS**

Table of Authorities . . . . . . . . . . . . . . . 4

Statement of Case . . . . . . . . . . . . . . . 7

Issues Presented . . . . . . . . . . . . . . . 9

Statement of Facts . . . . . . . . . . . . . . . 7

Summary of Argument . . . . . . . . . . . . . . 14

Argument . . . . . . . . . . . . . . . . 15

**1.     Response to Issue No. 1:**

The State erroneously placed the burden of proof on Wilson……….…..15

**2.     Response to Issue No. 2:**

The trial court did not abuse its discretion by submitting a
jury charge that limited the State's residency challenge
to November 5, 2013……………………………………………….16

**3.     Response to Issue No. 3 and 4**

Appellant's Legal  and Factual Sufficiency Argument Fails…………...…19

**4.     Response to Issue No. 5.**

Appellant failed to preserve error…………………………………..30

Prayer …………………………………………...……………….33

Certificate of Service . ………………………………………..33

# TABLE OF AUTHORITIES

*City of Keller v. Wilson,* 168 S.W. 3d 802, 822 (Tex. 2005)……………....27

*City of Santa Fe v. Young*, 1995 WL 529189
(Tex.App-Houston [14 Dist.] 1995). ………………………………....……23

*City of Wichita Falls v. State of Texas*, 526 S.W. 2d 618,
622 (Tex. Civ.App.—1975)……………………………………....……....15

*Cramer v. Graham*, 264 S.W.2d 135, 138
(Tex.Civ.App.—San Antonio 1954)……………….….……………...….…25

*Cruz v. Andrews Restoration, Inc*. 364 S.W. 3d 817, 829 (Tex. 2012)…….18

*Cunningham v. Pardale Bank*, 660 S.W.2d 810, 813 (Tex. 1983). …...……17

*Dow Chem. Co. v. Francis*, 46 S.W. 3d 237, 241 (Tex. 2001)…………19,26

*Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d
757, 761 (Tex. 2003). …………………………………………….…26

*Hall v. Lone State Gas Co.*, 954 S.W.2d 174, 177
(Tex.App.—Austin 1997, pet denied)……………………………….…..30

*In re Harvey B. Dawson*, 2002 WL 34231215
(Tex.App.—Corpus Christi, 2002(not cited for publican) …………….…..21

*In re Kelly*, 421 S.W. 3d, 913, 918 (Tex.App.—Tyler, 2014) ………....…24

*In re Lai*, 333 S.W. 3d 645, 648 (Tex.App.—Dallas, 2009) ………….....…21

*Jordan v. Overstreet*, 352 S.W. 2d, 296, 300
(Tex.App.—Beaumont 1961). …………………………………....……..24

*LaLande v. State*, 676 S.W. 2d 115. 116 (Tex.Crim.App. 1984)…………..23

*Lile v. Smith*, 291 S.W.3d 75, 79 (Tex.App.—Texarkana,
2009)……………………………………………………………….…17

*McBeth v. Streib*, (Tex.Civ.App.) 96 S.W.2d 992, 995 (1936)………..……..21

*McDuffee v. Miller*, 327 S.W. 3d 808. 820
(Tex.App.—Beaumont 2010). …………………………………...…..25

*Mills v. Bartlett*, 377 S.W. 2d 636, 637 (Tex. 1964)………………...…..20

*Nixon v. Slagle*, 885 S.W.2d 658, 661 (Tex.App.—Tyler 1994)………..…21

*Osterberg v. Peca*, 12 S.W. 3d 31, 55 (Tex. 2001)……………...………19

*Stacy v. Stacy*, 480 S.W. 2d 479, 482 (Tex.Civ.App.—Waco 1972) ……...18

*State v. Chacon*, 273 S.W. 3d 375 (Tex.App.—San Antonio 2008)….. …..17

*State v. Johnson*, 150 S.W.2d 957 (Tex. 1951) ……………………...……15

*State ex rel. Osborn v. City of Mc Allen*, 127
Tex. 63, 91 S.W.2d 688 (Comm'n App. 1936)…………………………23

*Trenholm v. Ratcliff*, 646, S.W. 2d 927, 933 (Tex. 1983)…………………31

*WorldPeace v. Comm'n for Lawyer Discpline*, 183 S.W. 3d 451,
457 (Tex.App.—Houston [14[th] Dist.] 2005). ……………………..…17

**RESPONSE TO ISSUES**

1.      The trial court not abuse its discretion submitting a jury charge that limited State's residency challenge to November 5, 2013 where the jury charge conformed to the State's pleadings and where the State approved the charge, without objection.

2.      State failed to prove Wilson's residence as a matter of law. The jury's unanimous verdict was not against the great weight of the evidence.

3.      State presented no valid public policy argument.

## STATEMENT OF FACTS

1.	Wilson filed his sworn application for Houston Community College, Trustee, District II on August 26, 2013.  Wilson's application identified his permanent residential address as 5600 West 34th Street.  It is undisputed that 5600 West 34th Street is within District II.  The election was on November 5, 2013.[1]	Defendant David Wilson won the election and now holds the official position as Houston Community College Trustee for District II.

2.	After Wilson won the election, the State filed a Quo Warranto proceeding and challenged Wilson's eligibility to hold office solely based on his residency.  The State's live pleading was titled "State of Texas First Amended Petition of Quo Warranto."   The State's petition alleged the following:

> On or about Tuesday, November 5th, 2013, an election was conducted in Harris County, Texas to elect a Trustee to Houston Community College System (HCC), District II.
>
> The State of Texas, through the Harris County Attorney's Office, **will show that David B. Wilson was not at the time of the election in November 2013, a resident of HCC District II, and is therefore ineligible to serve in that office.[2]**

---

[1] These facts are undisputed: See State's Brief, Page 2.
[2] Clerk Record:  Pg. 6

3.      At trial, counsel for the State made an opening statement.  The State's opening statement indicated that the only question for the jury was where Wilson resided **on Election Day**.  Specifically, counsel stated:

> *"There is only going to be one question and that is: What is the residence of Mr. Wilson as of Election Day last year."*[3]

4.      Before jury deliberations, the court conducted a jury charge conference.   The court carefully reviewed each page of the proposed jury charge, in open court, and asked each party for their objections.   **The State approved the charge and made no objection**.[4]   The instructions and questions to the Court's charge read in part:   [C.R. Pg.18]

> *"Residence" means domicile, that is one's home and fixed place of habitation to which one intends to return after any temporary absences.  Whether one is a resident depends upon the circumstances surrounding the person involved.*
>
> *Volition, intention, and action are all elements to be considered in determining where a person resides and such elements are equally pertinent in denoting one's residence.*
>
> *You are instructed that the 5600 W. 34th Street address is located within Houston Community College (HCC) District II. You are further instructed that the 7307 Lake Lane address is*

---

[3] R.R. Vol. 3, Pg. 133.
[4]  R.R. Vol. 4  Pg 86-91;  Also See State's Brief Pg. 3. (State did not object to the charge)

8

*not located with Houston Community College (HCC) District II.*

***Question No. 1:*** [C.R. Pg. 19]

*Do you find by preponderance of the evidence that David B. Wilson was not a resident of Houston Community College (HCC) District II as of November 5, 2013?*

*Answer:*

*Circle one of the following:*

*David B. Wilson was a resident of HCC District II as of November 5, 2013 or*

*David B. Wilson was not a resident of HCC District II as of November 5, 2013.*

5.     During closing argument, the State argued to the jury that its decision would based on Wilson's residency on November 5, 2013.  Specifically, counsel stated:

*"Do you find by preponderance of the evidence that David B. Wilson was not a resident of Houston Community College District II as of November 5, 2013."[5]*

6.     The jury indicated that Wilson was a resident of HCC District II by circling the appropriate answer.[6]   At trial, Wilson testified he lived at 5600

---

[5] Vol. 4  Pg. 94.
[6] C.R.  Pg. 19

9

West 34th Street in Houston and moved there in the year 2012.[7] His driver's licensed designated his residence 5600 W. 34th Street was issued in May of 2012.[8] When asked why Wilson considered 5600 West 34th Street his residence he stated: *"I want it to be my residence. I live there. I spend the majority of my time there. I want to live in the city of Houston. The politics in the city of Houston affects my life and my business; so I choose to live there so I can be active in the Houston politics."*[9] Wilson does not dispute he operates a business out of the building that looks like a warehouse, but he bought the property was because it had an apartment in it as well.[10]

7.      Wilson testified that some of his reasons for designating District II, as his residence were political. Wilson was concerned about Houston Community College spending $45 million to support its campus in the Middle East country of Qatar. Wilson also voiced his concern that Houston Community College spent $8.3 million on a piece of property that appraised for $2.7 million dollars.[11] Over the prior 10 years Wilson ran in multiple elections within Houston and Harris County, and he never designated the Lake Lane address has his residence.[12]

---

[7] R.R. Vol. 3 Pg. 147  Ln 21- 148
[8] R.R. Vol. 5b  Exhibit No. 2; Testimony R.R. Vol. 4. Pg. 31  Ln 22- Pg. 32
[9] R.R. Vol. 4 Pg. 18- 19
[10] R.R. Vol. 4 Pg 31  Ln 2-7
[11] R.R. Vol 4 Pg. 29 through 30 Ln 9
[12] R.R. Vol. 5B:  Ex.No. 48 (Voter's Registration History)

8.     Wilson testified to establish his residency, he changed his voter's registration, his driver's license, all of his individual and personal bank accounts, the joint accounts, and his utilities bills to the residence.[13]

9.     Regarding the physical design of the building, Wilson testified there is an apartment on the second floor.[14] The second floor apartment contains a fully furnished kitchen, bedroom, living area, closets and a bathroom.[15] The State's Brief did not contest Wilson's testimony that he actually spent most of his time at the 5600 West 34th address, but merely contested the documentation supporting his residence.

10.    Wilson's residence was not only established by his testimony, but also through documentation evidencing his intent, volition and actions. Wilson offered a copy of his sworn application to ballot (Vol. 5B Ex.1), driver's license, (Vol. 5B Ex.2), voter's registration (Vol. 5B Ex.3), various photos of his apartment (Vol. 5B Ex.33-40), bank statements for relevant times (Vol. 5B Ex.7), CitiBank statement (Vol. 5B Ex.8), CitiBank Checks (Vol. 5B Ex.9), Canada Drug shipping statement (Vol. 5B Ex.10), Shell charge statement (Vol. 5B Ex.11), rapid rewards (Vol. 5B Ex.12), toll bill (Vol. 5B Ex.13 ), quick pass bill (Vol. 5B Ex.15), Visa Rapid Rewards (Vol. 5B Ex.17), BBVA Compass Acct Summary (Vol. 5B Ex.18), advertisements

---

[13] R.R. Vol 4 Pg. 30 Ln 14 – Ln 21.
[14] R.R. Vol. 4 Pg 30  Ln 22 through Pg. 31.
[15] R.R. Vol 5B:  Ex. No. 33-40

11

(Vol. 5B Ex.20-25), Magazines subscriptions (Vol. 5B Ex. 24,26,29,30,31,32, and 45), phone bills (Vol. 5B Ex.57, 66), American Express (Vol. 5B Ex.60), EZ tag statements (Vol. 5B Ex.64), electric bills (Vol. 5B Ex.63), voter's registration history (Vol. 5B Ex. 48) and video of Wilson actually residing at his residence over a three-day period.

11.     The State pointed out Wilson's wife, Connie lives at 7307 Lake Lane. Despite the fact that David Wilson is married to Connie, the Lake Lane property is solely in the name of Connie Wilson.[16] Wilson testified that the property solely belonged to his wife, Connie.[17]

12.     Wilson also maintained a Wells Fargo account personal bank account that listed his residence at 5600 West 34th Street. Wilson changed the address on the account to reflect the 5600 W. 34th address in the spring of 2013.[18] Wilson's rapid reward credit card identified Wilson's residence as 5600 W. 34th Street. Wilson indicated he designated his residence in spring of 2012.[19] Wilson testified he's been getting Consumer Reports magazine at the 5600 address since the spring of 2012.[20]

13.     At the conclusion of the trial, the jury deliberated and returned a unanimous verdict in favor of Wilson. Thereafter, the State filed a Motion

[16] R.R. Vol. 4. Pg. 32 Ln 20 – Pg. 33
[17] R.R. Vol. 4 Pg. 33. Ln 2- Ln 6; Also See RR. Vol. 5B Exhibit No. 6.
[18] R.R. Vol 4. Pg. 33 Ln 11- Pg. 34 Ln 7. and R.R. Vol. 5B Exhibit No. 7.
[19] R.R. Vol. 4. Pg. 35 Ln 21 – Pg. 36 Ln 10
[20] R.R. Vol. 4 Pg. Ln 14 – Ln 22.

for a Judgment not Withstanding the Verdict. The State's motion was denied. The State Appealed.

\

## SUMMARY OF ARGUMENT

14.    Under Texas law, one residence is established through their volition, intent, and actions.  Residency is a question of fact where controverting evidence is presented.  The State sought to prove that  Wilson did not reside in District II, by attempting to prove an alternate residence outside the district. The jury found in favor of Wilson.  The State presented no-evidence of residency that was conclusive, as a matter of law.   Because Wilson presented controverting evidence of his residency, the jury verdict and judgment were both legally and factually sufficient.

15.    The State, by its own accord, limited its residency challenge to a single day, November 5, 2013. The State's pleadings, opening statement, jury charge, and closing arguments confirm the same.  Because the State did not seek to challenge Wilson's residency for a six-month  period prior to the election, the Court made no error.

16.    The State's public policy argument was not made at trial, therefore, State failed to preserve the matter for appeal.  Further, the argument merely a re-characterized  its prior argument that the evidence was insufficient to sustain the verdict.

## Argument and Analysis

**Response No. 1**

**The State Erroneously Placed the Burden of Proof on Wilson to Establish his Residency.**

-------------------------------------

17. The State argued that Wilson maintained the burden of proof to establish his residence, and that he failed to meet his burden. [State's Brief, Pg. 3, 9,11 and 16] Flowing from this argument, the State contends the trial court erred, or abused its discretion. The State's contention is flawed both legally and factually. At trial, the State was the plaintiff. It was the State's burden to show, by preponderance of the evidence, that Wilson was not eligible to hold public office because he resided outside the geographical boundaries of District II. Accordingly, the State's entire brief is flawed from the onset, because it erroneously placed the burden of proof on Wilson.

18. Legally, the burden of proof was on the State to establish that Wilson resided outside the boundaries of District II. *City of Wichita Falls v. State of Texas*, 526 S.W. 2d 618, 622 (Tex. Civ.App.—1975)(State had the burden of proof in Quo Warranto proceeding) and *State v. Johnson*, 150 S.W.2d 957 (Tex. 1951). (Plaintiff had burden of proof in Quo Warranto proceeding.) Generally, in civil cases a plaintiff has the burden of proof as to each element of a cause of action. Wilson had no burden to prove he resided

within District II. Accordingly, the State's Brief is tainted throughout with its flawed reasoning.

**Response Issue No. 2:**

**The trial court did not abuse its discretion by submitting a jury charge that limited the State's residency challenge to November 5, 2013, where the jury charge conformed to the State's pleadings, and where the State approved the charge without objection.**

------------------------------------------------

19. The State was not obligated, as a matter of law, to limit its residency challenge to one particular day, but it did. The State's Quo Warranto action sought to remove Wilson from office on grounds that he did not reside within the geographical boundaries of District II on Election Day, November 5, 2013. The State's pleadings limited its residency challenge to November 5, 2013.[21] The State's opening statement informed the jury its decision would be based on where Wilson resided on November 5, 2013.[22] At the jury charge conference, the State did not object to the jury charge that

---

[21] C.R. Pg. 7; Section IV Facts.
[22] Vol. 3: Pg. 133.

16

focused on Wilson's residency on November 5, 2013.[23] During its closing argument, the State argued Wilson's residence should be determined based on the date November 5, 2013.[24] Thus, because the State limited its residency challenge to a single day, and did not object to the jury charge, the trial court did not abuse its discretion, or commit error.

20. A pleading's purpose is to give fair notice of a party's claims and the relief sought. *WorldPeace v. Comm'n for Lawyer Discpline*, 183 S.W. 3d 451, 457 (Tex.App.—Houston [14th Dist.] 2005, pet denied. The Rules which Texas courts operate require that the judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict. *Lile v. Smith*, 291 S.W.3d 75, 79 (Tex.App.—Texarkana, 2009); TEX.R.CIV.P.301. A party may not be granted relief in the absence of pleadings to support that relief. *Cunningham v. Pardale Bank*, 660 S.W.2d 810, 813 (Tex. 1983). The State clearly and unambiguously limited its Quo Warranto cause of action to Wilson's residency on November 5, 2013. The State's argument that the trial court erred or abused its discretion in applying the law to one day is without merit. If the State wanted to base its Quo Warranto action based on Wilson residency on the preceding six months, it merely had to "plead" for it and "request" it.

---

[23] R.R. Vol. 4  Pg 86-91;  Also See State's Brief Pg. 3. (State did not object to the charge)
[24] Vol. 4: Pg. 94

21.     Additionally, the State waived error by failing to raise the issue to the Court.  "Our procedural rules state that a complaint to a jury charge is waived unless specifically included in an objection." *Cruz v. Andrews Restoration, Inc.* 364 S.W. 3d 817, 829 (Tex. 2012).   The State failed to reconcile this point of law in its brief.  Because the State did not request a charge that included a six-month residency requirement, and did not object to the charge submitted to the jury, it waived error.[25]

---

[25] See Appellant's Brief, Pg. 3:  State Wrote:  The State did not object to the charge.

**Response No. 3:**

**Appellant's Legal Sufficiency Argument Fails Because State Cannot Establish Wilson's Residence as a Matter of Law:**

-----------------------------------------------

22. In an absence of an objection to the jury charge, appellate courts evaluate the sufficiency of evidence in light of the charge submitted to the jury. *Osterberg v. Peca*, 12 S.W. 3d 31, 55 (Tex. 2001). When a party challenges the legal sufficiency of an adverse finding on which he had the burden of proof, he must demonstrate on appeal that the evidence conclusively established the facts in his favor as a matter of law. *Dow Chem. Co. v. Francis*, 46 S.W. 3d 237, 241 (Tex. 2001). Accordingly, it was the State's burden to show Wilson did not reside within District II on November 5, 2013 as a matter of law. The State failed.

**Residency is a Question of Fact:**

23. It is well established that one's residency is largely a question of fact. The Texas Election Code defines the term "residence" relative to the common law. Texas Election Code § 1.015 provides in part:

> (a) In this code, "residence" means domicile, that is one's home and fixed place of habitation to which one intends to return after any temporary absence.

(b)    Residence shall be determined in accordance with the common-law rules, as enunciated by the courts of this state, except as otherwise provided by this code.

24.    Texas Election Code 1.015(b) provides that residency "shall be determined by common-law rules except as otherwise provided by the Election Code." *In re Kelly*, 421 S.W. 3d, 913, 917 (Tex.App.—Tyler, 2014). The definition of "residency" is fact specific.   TEX.ELEC.CODE § 1.015(a).    In 1964 the Texas Supreme Court held that volition, intention and action are the elements, or facts to be considered in determining a person's residence.   The court wrote:

> "The term 'residence' is an elastic one and is extremely difficult to define. The meaning that must be given to it depends upon the circumstances surrounding the person involved and largely depends upon the present intention of the individual. Volition, intention and action are all elements to be considered in determining where a person resides and such elements are equally pertinent in denoting the permanent residence or domicile." *Mills v. Bartlett*, 377 S.W. 2d 636, 637 (Tex. 1964).

25.    Historically residency is a question of fact.   "It is well settled, we think, that the question of one's residence in this state is distinctly one of

intention and of fact." *McBeth v. Streib*, (Tex.Civ.App.) 96 S.W.2s 992, 995 (1936) citing *Savage v. Umphries*, (Tex.Civ.App.) 118 S.W. 893 (1909); *Garvey v. Cain*, (Tex.Civ.App.) 197 S.W. 765 (1917); *Marsden v. Troy*, (Tex.Civ.App.) 189 S.W. 960 (1916);; and *Hogg v. Waddell*, (Tex.Civ.App.) 42 S.W.2s 488. *In re Lai*, 333 S.W. 3d 645, 648 (Tex.App.—Dallas, 2009) (holding the issue of residency is a question of fact.); *In re Harvey B. Dawson*, 2002 WL 34231215(Tex.App.—Corpus Christi, 2002(not cited for publican) citing *Stacy v. Stacy*, 480 S.W. 2d 479, 482 (Tex.Civ.App.—Waco 1972) (holding in Texas, residency is a question of fact.). The elements of volition, intention, and action are all questions of fact. To prove one's residence, as a matter of law, is a difficult burden. The State did not meet its burden where Wilson offered controverting evidence of his residence.

26. The Stated cited a single case where a party "Chair" declared a candidate ineligible based on uncontroverted evidence and sworn statements of the candidate himself. *Nixon v. Slagle*, 885 S.W.2d 658, 661 (Tex.App.—Tyler 1994) In *Nixon*, the "Chair" relied on undisputed public records that the candidate had established a residency in Travis County, he had accepted employment in Travis County, and filed a sworn statement with the "Chair" that he intended to be a resident of Travis County. The records reviewed by the Chair were undisputed. *Id.* That is not the case in

*Wilson*.     In *Wilson*, the State's evidence was controverted.  Secondly, the documents relied on by the State did not establish Wilson's residency, as a matter of law, on November 5, 2013, or the prior six-month period

27.    The State relied on Wilson's Federal Income Tax Return from the years 2008-2012.  For the year 2012, the Tax Return admitted into evidence was one page.  The tax return did not contain Mr. Wilson's signature, much less his sworn signature. The State failed to prove when the document was filed.   Further, the document provided a space for Wilson's address, **not his residence**.    The State then cited Wilson's Application for Voter's Registration [P.E. 4]  The application was dated  December 21, 2012, long before the November 5, 2013 date, or the six-month period.  The failure to timely change his voter's application is not conclusive evidence, as a matter of law.    Next, the State alleged the City of Houston "red tagged" the warehouse at 5600 West 34th Street making it unlawful to inhabit as a residence. [State's Ex. 13]  State's exhibit [13] evidenced that the building was "red tagged"  on January 7, 2014. This date is not November 5, 2013, nor part of the prior six-month residency period.  Further, the City's "red tag" has no bearing on the elements of Wilson's volition, intent, or actions. Residency is determined by the conduct of the one establishing a residency, not by the conduct of a third party.  Thus, under the common law, it is

22

Wilson's conduct that is scrutinized to determine his residency, not the City of Houston.

28.     Further, the ordinance that State referred to was not offered nor admitted into evidence.  The State incorporated Houston Amendments to 2006 International Building Code into its Brief erroneously. [Pg. 17] (Appellee Request the Ordinance be struck from the Brief)   An ordinance must be proved by competent evidence.  *State ex rel. Osborn v. City of Mc Allen*, 127  Tex. 63, 91 S.W.2d 688 (Comm'n App. 1936). Ordinances must be proved—neither the trial court nor the appellate Court may take judicial notice of it. *LaLande v. State*, 676 S.W. 2d 115. 116 (Tex.Crim.App. 1984). Thus, because the ordinance was not admitted into evidence at trial, it may not be considered on appeal.

29.     Thirdly, Wilson's residence is determined by state statute,  Texas Election Code § 1.015.   A city ordinance may not preempt a state statute. *City of Santa Fe v. Young*, 1995 WL 529189 (Tex.App-Houston [14 Dist.] 1995).   A state law preempts a home rule city ordinance to the extent the state law is irreconcilably inconsistent. *State v. Chacon*, 273 S.W. 3d 375 (Tex.App.—San Antonio 2008).

30.     The State also alleged that Wilson paid taxes on the Lake Lane property year after year. [State's Brief, Pg. 12]    In the State's Motion for

Judgment Notwithstanding the Verdict, it alleged that "Wilson" claimed a homestead exemption on the property. However, the State failed to point out whether it was "Connie" Wilson or "David" Wilson who paid the taxes or who declared the homestead exemption.

31. The Tax Code provides a family or single adult is entitled to an exemption from taxation for the county purposes…" TAX CODE § 11.13. Nowhere does the Tax Code prohibit Ms. Wilson from claiming a tax exemption where she resides at the Lake Lane address. The State put on no evidence that Wilson personally claimed the exemption, or that the exemption must be asserted by a married couple jointly. Therefore, Plaintiff's argument fails factually. Legally, Plaintiff's argument fails because a homestead exemption is not conclusive on the matter.

32. In a recent case, the court of appeals ratified the holding in *Mills*, holding "whether a person resides in a particular county according to the election code definition is a question of fact." *In re Kelly*, 421 S.W. 3d, 913, 918 (Tex.App.—Tyler, 2014) citing *Jordan v. Overstreet*, 352 S.W. 2d, 296, 300 (Tex.App.—Beaumont 1961). The court in *In re Kelly* held the one's voting history is not conclusive evidence of one's residency, but an important factor. 421 S.W.3d at 917. The court also held that a homestead exemption is equally inconclusive. The court held:

"A homestead designation may be relevant to resolution of a dispute concerning the person's residence for purposes of the election code. However, no one factor is dispositive on the question of one's intended residence. Therefore we cannot say that the document verifying Stone's homestead exemption conclusively shows her ineligibility as a candidate for Judge. At most, Stone's Williamson County voting history and the document verifying her 2014 Williamson County homestead exemption raise a fact issue concerning her residence for the relevant two-year period. These documents do not, either considered separately or read together conclusively establish that Stone is ineligible to be a candidate for Judge."

33. In 2010, the Beaumont Court of Appeals also held the a homestead exemption is not conclusive on the issue stating: "a designation of a homestead outside the voter's district may be relevant to a trial court's resolution of a dispute concerning a voter's residence." *McDuffee v. Miller*, 327 S.W. 3d 808. 820 (Tex.App.—Beaumont 2010) The Beaumont court cited *Cramer v. Graham*, holding maintaining a homestead on residence outside the RUD district does not defeat a claim of residency. 264 S.W.2d 135, 138 (Tex.Civ.App.—San Antonio 1954).

34. In conclusion, the State did not establish Wilson's residence, as a matter of law on any particular date, much less November 5, 2013.

Evidence that Wilson resided within District II was offered and admitted before the trial court. Thus, because of the contradiction in evidence, the State cannot prevail on its legal sufficiency argument.

**Response No. 4:**

**Appellant's Factual Sufficiency Argument Fails Because State Cannot Demonstrate the Jury Verdict was Against the Great Weight of the Evidence.**

----------------------------------------------

35.     When a party challenges that factual sufficiency of an adverse finding on which he had the burden of proof, he must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co.* 46 S.W. 3d at 242. The judgment will be reversed if, in light of the entire record, the evidence supporting the finding is so weak or the finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Id.* The court must be mindful that the fact-finder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). The courts indulge every reasonable inference to support the judgment, crediting favorable evidence if a reasonable fact-finder could, and disregarding contrary evidence unless a

reasonable fact-finder could not. *City of Keller v. Wilson,* 168 S.W. 3d 802, 822 (Tex. 2005).

36.     At trial, Wilson testified he lived at 5600 West 34th Street in Houston and moved there in the year 2012.[26] His driver's license designated his residence at 5600 W. 34th Street and was issued in May of 2012.[27] Wilson testified to establish his residency he changed his voter's registration, his driver's license, all of his individual and personal bank accounts, the joint accounts, and his utilities bills to the residence.[28] Wilson explained that he wanted to establish his residence at 5600 W. 34th to be active in Houston politics.[29]

37.     The property at 5600 W. 34th Street had a second floor apartment which contained a fully furnished kitchen, bedroom, living area, closets and a bathroom.[30] Wilson testified he lived there and spent the majority of my time there.[31] Wilson testified that he sleeps at 5600 W. 34th Street five nights a week and spends all day there.[32] Wilson then testified about his specific activities at the 5600 address.[33]

---

[26] R.R. Vol. 3 Pg. 147 Ln 21- 148
[27] R.R. Vol. 5b Exhibit No. 2; Testimony R.R. Vol. 4. Pg. 31 Ln 22- Pg. 32
[28] R.R. Vol 4 Pg. 30 Ln 14 – Ln 21.
[29] R.R. Vol. 4 Pg. 18- 19
[30] R.R. Vol. 4 Pg. 44- Pg. 45.  and  Vol. 5B: Defendant Exhibits 33-41
[31] R.R. Vol. 4 Pg. 18- 19
[32] R.R. Vol. 54  Ln 20-24
[33] R.R. Vol. 4 Pg. 55 Ln 1 –13.

38.     Conversely, the property at 7307 Lake Lane is solely in the name of his wife, Connie Wilson.[34] Over a 13-year period, Wilson had run in multiple elections including two mayor elections, a commissioner election, and Houston Community College Trustee. Over the 13-year period, Wilson had not declared the Lake Lane address his residence on his voter's registration application.[35] Wilson's Voter's Registration History evidenced Wilson had not designated the Lake Lane his residence going back to 1994.[36] Wilson testified that he has asked his wife to move into the Houston city limits, but she refused.[37]

39.     Admitted into evidence where multiple exhibits evidencing that Wilson intended 5600 W. 34 Street to be his residence. Admitted were multiple bank statements,[38] credit card statements,[39] utility statements,[40] driver's license,[41] multiple magazine subscriptions,[42] and the State's private investigators report that showed Wilson was occupying the 5600 address during the investigation.[43] While the State correctly pointed out that some of the Wilson's exhibits don't contain dates, they do show his intent, action,

---

[34] R.R. Vol. 4 Pg. 32  Ln 20- Pg. 33 Ln 6
[35] R.R.  Vol. 4 Pg. 19 Ln 6-22;     Pg. 24 Ln 1 –12;    Pg. 47  Ln 8-15
[36] R.R. Vol. 5B Exhibit No. 48.
[37] R.R. Vol. 4 Pg. 24  Ln 13- Pg. 25 Ln 9.
[38] R.R. Vol. 5B  Exhibit No. 7,8, and 9.
[39] R.R. Vol. 5B  Exhibit 11, 60 and 61.
[40] R.R. Vol. 5B Exhibit 58 and 63.
[41] R.R. Vol 5B Exhibit No. 2
[42] R.R. Vol. 5B Exhibits 24-32.
[43] R.R. Vol. 5B Exhibit No. 71

and volition that the 5600 W. 34th Street be considered his permanent residence. Furthermore, it was not Wilson's obligation to prove 5600 W. 34th is his residence, it was the State's burden to show the contrary.

40. The documents admitted by the State do not show Wilson's residence on November 5, 2013, nor the preceding six-moth period. Any inference derived from the State's exhibits must be inferred in favor of the jury verdict. Likewise, the exhibits admitted by Wilson must be inferred in favor of the jury verdict. Factually, the State failed to place Wilson in the Lake Lane house at any relevant time, or duration. The State offered no evidence to contradict Wilson's testimony that he spent five nights a week at the 5600 W. 34th Street address.

41. In conclusion, Wilson made every reasonable effort to establish the 5600 W. 34th Street his residence. It was Wilson's action, volition, and intent that the 5600 W. 34th Street be his residence. The jury **unanimously** found the same. The State did not show that the jury verdict was against the great weight and preponderance of the evidence. Therefore, this court should affirm the trial court's judgment.

**Response No. 5:**

**State's public policy argument should be denied on grounds that (1) it failed to raise the issue in the trial court; (2) it failed to cite authority to support its arguments; (4) the State's argument, in part violates 42 U.S. C. § 1983; and (4) it constitutes a collateral attach on the jury's verdict.**

-------------------------------------------------

42. The State made multiple arguments that the jury verdict and judgment should be reversed based on public policy arguments. The various arguments were not raised to the trial court, supported by authority, violate 42 U.S.C. § 1983, and constitute a collateral attack on the jury's verdict. Accordingly, the judgment should be affirmed.

43. The State's public policy arguments included: **1)** Basic tenets of a democracy and the Constitution of the United States require no taxation without representation; **2)** Elected officials should meet or exceed residence standards students must meet for school attendance and sports teams; **3)** Persons should be denied the opportunity to claim and benefit from two equal residences; **4)** Democracy depends on the ethical behavior and honesty from its elected officials; and **5)** Opportunity existed for Wilson to run for a position from his community rather than denying HCC District II community voice. However, the State failed to raise these arguments to the

trial court, and therefore waived error. Tex.R.App.P 33.1(a); *Hall v. Lone State Gas Co.*, 954 S.W.2d 174, 177 (Tex.App.—Austin 1997, pet denied). Further, the State failed to support its argument with citations. The failure to support its argument(s) with citations or authority, waives the error for review. *Trenholm v. Ratcliff*, 646, S.W. 2d 927, 933 (Tex. 1983).

44. Additionally, the State's public policy arguments constitute a collateral attack on the jury's verdict and the law of residency. Texas Election Code § 1.015 is the authority used to determine Wilson's residency. The jury was properly instructed on the law and unanimously determined Wilson's residence. Thus, the State's argument regarding "no taxation without representation" and that Wilson should be denied the opportunity to benefit from two residences is flawed from the onset. Wilson is the representative from District II, so the people are not deprive representation. Secondly, Wilson has only one residence, and the jury resolved the question. The State's argument is nothing more than an attack on the jury verdict. Next, the State argued that Wilson's residency should meet or exceed residency standards for students. This is an attack on Texas Election Code § 1.015 that prescribes the law of residency. If the Statute is flawed, the State may repeal it, or amend it. Requesting the court of appeals to ignore

the law in the name of public policy is an impermissible collateral attack on the jury verdict and the law.

45. Lastly, the State argued that Wilson, a Caucasian denies representation to the African-American residents who live there is a racist argument, and contravenes the Equal Protection Clause of the United State's Constitution. The State's argument implied that because District II is predominantly African-American, it should be represented by another African –American, as opposed to a Caucasian like Wilson. The State went further to write, "Wilson's evidence lacks proof of any interaction with the members of the African-American community." [ Pg. 19]. This argument is a clear violation of the equal protection clause.

46. In conclusion, the State's brief is fundamentally flawed throughout. The State erroneously attempted to persuade this Court that the burden was on Wilson to establish his residency, as opposed to acknowledging that the burden rested with the State. Next, the State simply disregarded its position at trial and complained that the judge erred in failing to submit a jury charge that requested the jury determine Wilson's residence over a six-month period. Thereafter, the State sought to include an ordinance on appeal that was not admitted into evidence at trial. Finally, the State concluded its brief by forwarding numerous arguments that were not presented to the trial

court, including that District II should be represented by an African-American, as opposed to Caucasian. Setting aside that State's erroneously arguments, the trial court's judgment should be affirmed because the trial court committed no reversible error, that State did not prove, as a matter of law its contentions, and the verdict was not against the great weight of the evidence so as to cause an injustice.

## Prayer

Wilson prays that this Court affirm the trial court's judgment.

## Certificate of Service

I certify that opposing counsel was electronically served the foregoing brief on May 11, 2015 via Email at Barbara.Armstrong@coa.hctx.net.

/s/ *Keith Gross*

## Certificate of Compliance

As required by TRAP 9.4, I certify that the number of words in this documents is 5172 relying on the word count Microsoft Word used to prepare this document.

/s/ *Keith Gross*